**Garry W. EVENSON, Plaintiff–Appellant,**

**v.**

**COLORADO FARM BUREAU MUTUAL INSURANCE CO., Defendant–Appellee.**

**No. 92CA1297.**

Colorado Court of Appeals,
Div. II.

Dec. 30, 1993.

As Modified on Denial of Rehearing
March 3, 1994.

Certiorari Denied Aug. 29, 1994.

**404**

Froede & Lichtenstein, David Lichtenstein, Joan W. Froede, Westminster, for plaintiff-appellant.

Robinson, Waters, O'Dorisio & Rapson, Gregg C. McReynolds, Denver, for defendant-appellee.

Opinion by Judge TAUBMAN.

Plaintiff, Garry W. Evenson, appeals the judgment entered on a jury verdict in favor of defendant, Colorado Farm Bureau Mutual Insurance Company (Farm Bureau), concluding that he did not prove his claim of age discrimination as the basis for his constructive discharge. Evenson also appeals the trial court's dismissal of his breach of implied contract claim and its award of costs to Farm Bureau. We affirm in part, reverse in part, and remand for a new trial.

In 1985, a new Chief Executive Officer (CEO) was appointed and reorganized the Farm Bureau. At that time, Evenson, a 25–year company employee, was put in charge of the Brokerage Division. During Evenson's management, the brokerage division continued to lose money despite the reorganization.. However, according to his supervisor, Evenson was competent, loyal, and knowledgeable and was never disciplined for any reason.

In 1988, Farm Bureau decided to combine Evenson's brokerage division with five other Farm Bureau brokerages. This change eliminated Evenson's job. The CEO informed Evenson that his position as Director of Brokerage had been eliminated and offered him a position as a field engineer and auditor at a pay cut of approximately $10,000 per year.

At the same meeting, Evenson received a letter of reprimand and final warning based on derogatory remarks he had allegedly made about the company, the CEO, and other employees. Evenson was informed that his continued employment as a field auditor was subject to the terms of the final warning he was given later that day. The final warning specified that "any further complaints or observations" of Evenson making "derogatory or disparaging comments" would be cause for immediate termination without any severance benefits.

The CEO offered Evenson two options. Evenson could continue his employment subject to the terms of the final warning or he could resign immediately with severance pay

and accrued vacation. Evenson chose to resign.

Evenson filed suit almost three years after his termination. He claimed that Farm Bureau had discriminated against him, both generally and willfully, because of his age, by constructively discharging him, and had breached an implied employment contract.

At a jury trial, the trial court dismissed the implied employment contract claim at the close of Evenson's evidence because it found that he had failed to demonstrate that he was not an "at-will" employee.

The trial court also ruled that since Evenson's constructive discharge claim based upon willful violation of the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. 623 et seq. (1988), was governed by a three-year statute of limitations, it would be submitted to the jury. But, it further concluded that the nonwillful ADEA claim was barred by the applicable two-year statute of limitations.

The trial court instructed the jury that in order to prove a willful ADEA violation Evenson must show that Farm Bureau knew or showed reckless disregard that its conduct was prohibited by the ADEA and that age was a predominant factor in the discharge. The jury received a separate instruction for the constructive discharge claim.

It was also given two special interrogatories. The first interrogatory required the jury to determine whether Farm Bureau committed basic discrimination and the second required a specific jury finding as to whether Farm Bureau had committed willful discrimination. The jury returned a verdict in favor of Farm Bureau and answered both of the special interrogatories in the negative.

## I. Willful Violation of the ADEA

Evenson contends that the trial court erroneously instructed the jury as to the standard for willful violation of the ADEA. Farm Bureau contends that Evenson cannot prevail on this claim because the instruction was proper, and because, even if the jury instruction on willfulness was incorrect, the jury concluded in one special interrogatory

that there was no basic discrimination. We agree with Evenson.

Section 4(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1) (1988), makes it unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

■ To establish a *prima facie* case of basic discrimination an employee must show that he or she was 40 years of age or older, that he or she was doing satisfactory work, that he or she was discharged despite the adequacy of his or her work, and that his or her position was filled by a younger employee. *Brown v. Denver Symphony Ass'n*, 794 P.2d 1011 (Colo.App.1989). To establish a claim for willful discrimination, the jury must additionally find that the employer either knew or showed reckless disregard for whether its conduct was prohibited by the ADEA.

■ The employer may rebut this *prima facie* proof if it produces evidence that the plaintiff was fired for a legitimate non-discriminatory reason. However, the plaintiff may still prevail if the employer's ostensible reason is actually a pretext for discrimination. *Brown v. Denver Symphony Ass'n, supra.*

Although some federal courts have used the "predominant factor" test, which requires an employee to demonstrate that age was a predominant factor in an employer's discharge decision, *see Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544 (10th Cir.1988), the United States Supreme Court rejected this test for proving a willful ADEA violation earlier this year. *See Hazen Paper Co. v. Biggins*, 507 U.S. ——, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). In so doing the court reaffirmed its holding in *Trans World Airlines v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).

■ The Supreme Court's unanimous opinion in *Hazen, supra*, 501 U.S. at ——, 113 S.Ct. at 1709–10, 123 L.Ed.2d at 351, states:

We therefore reaffirm that the *Thurston* definition of willful—that the employer ei-

ther knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute—applies to all disparate treatment cases under ADEA. Once a willful violation has been shown, the employee need not additionally demonstrate that the employer's conduct was outrageous, or prove direct evidence of the employer's motivation, *or prove that age was a predominant rather than a determinative factor in the employment decision.* (emphasis added)

Here, the trial court instructed the jury that any discrimination it found should be deemed willful if Farm Bureau either knew or showed reckless disregard for whether its conduct was prohibited by ADEA. The rest of the instruction, however, did not conform with *Hazen,* stating that: "Plaintiff must prove something more than that age was a determinative factor in defendant's conduct; for a willful violation to exist, you must find that age was the predominant factor in plaintiff's discharge."

■ We are bound to apply *Hazen* here. *See People in Interest of C.A.K.,* 652 P.2d 603 (Colo.1982). We reject Farm Bureau's assertion that *Hazen* should not apply retroactively. Under *People in the Interest of C.A.K., supra,* if a decision is not to be applied retroactively it must establish a new rule of law. We do not view *Hazen* as establishing a new rule of law. Rather, the Supreme Court specifically reaffirmed its holding in *Trans World Airlines v. Thurston, supra* defining willful ADEA violations and chided various courts of appeals for not properly applying it. Accordingly, applying *Hazen,* we conclude that the trial court improperly instructed the jury that it must find age was the predominant factor in Evenson's dismissal or discharge.

■ Farm Bureau's claim that the jury finding of no basic discrimination in one special interrogatory renders harmless any erroneous instructions is without merit since, as we discuss below, we conclude that the jury was also improperly instructed on the elements of Evenson's constructive discharge claim.

## II. Constructive Discharge

Evenson next contends that the trial court improperly instructed the jury as to the elements of constructive discharge. We agree.

■ A prima facie case of age discrimination by constructive discharge is established if an employee proves that the "employer, by its illegal discriminatory acts, has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 344 (10th Cir.1986).

■ Moreover, an employee who claims that an offer of early retirement constitutes age discrimination by constructive discharge can meet this burden by demonstrating that the offer sufficiently alters the status quo, that the choices make the employee worse off, and that, if the employee refuses the offer and decides to stay, the employer will treat the employee less favorably than other employees because of age. *Mitchell v. Mobil Oil Corp.,* 896 F.2d 463 (10th Cir.1990); *Bodnar v. Synpol, Inc.,* 843 F.2d 190 (5th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988).

Here, Evenson was offered, and accepted, an opportunity to retire from the company with six weeks of severance pay and benefits, and with the separation designated as a layoff. His only other choice was to accept a $10,000 pay cut and continue to work with the understanding that mere rumor of critical remarks about other employees or the company would result in his immediate termination without severance benefits.

One instruction by the trial court gave the jury this definition of constructive discharge from *CJI–Civ.3d* 31:8 (1993 Supp.):

[A] constructive discharge occurs when an employer makes or allows the employee's working conditions, as a result of discrimination by the employer, to become so *intolerable* that the employee has no other choice but to quit. The test is whether a reasonable employee would view the working conditions as *intolerable* and would feel compelled to resign. (emphasis added)

In contrast, Evenson tendered an instruction based on *Mitchell v. Mobil Oil Corp., supra,* which provided:

> An employee is constructively discharged from a position when an employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.

> An employee who claims that an offer of early retirement constitutes age discrimination by constructive discharge can meet this burden by demonstrating that the offer sufficiently alters the status quo that each choice facing the employee makes him worse off, and that if he refuses the offer and decides to stay, his employer will treat him less favorably than other employees because of his age.

Thus, Evenson's proposed jury instruction would have applied to his claim that he was offered a choice between early retirement and remaining with Farm Bureau under less favorable circumstances.

■ Although the trial court's instruction would have been proper for a state law claim, when considering an ADEA claim, the state courts must apply the law developed by the federal courts under that statute.

Farm Bureau argues that the trial court properly rejected Evenson's proposed instruction because the *Mitchell* court relied on a factually distinguishable situation. We disagree.

In *Mitchell,* Mobil Oil's plan to "lay off" older employees was similar to the choice Farm Bureau offered to Evenson. The only factual difference was that Farm Bureau did not have a plan designed for multiple employees, but instead took action only against Evenson. That distinction is irrelevant to the rationale of the *Mitchell* case. *See D'Aquino v. Citicorp/Diner's Club, Inc.,* 755 F.Supp. 218 (N.D.Ill.1991).

Evenson's tendered instruction was appropriate since he was placed in a worse position under either choice offered by Farm Bureau.

Thus, because the trial court erroneously instructed the jury of the standard to be used to prove he was constructively dis-

charged in violation of the ADEA, Evenson is entitled to a new trial.

Furthermore, because of the jury's answers to the special interrogatories, the improper jury instruction cannot be considered harmless error.

### III. Tolling of ADEA Two–Year Statute of Limitations

Evenson next argues that the trial court incorrectly ruled as a matter of law that the ADEA two-year statute of limitations had not been tolled. We agree with the trial court's determination.

The ADEA applies the two-year statute of limitations for "basic" or nonwillful violations, and the three-year statute of limitations for "willful violations" contained in the Portal-to-Portal Act of 1947. 29 U.S.C. § 255(a) 1988.

■ If the employer, through misleading conduct, induces a charging party to delay filing suit until the limitations period has run, the limitations period is tolled and the employer may be estopped from asserting the statute of limitations. *See Ott v. Midland–Ross Corp.,* 600 F.2d 24 (6th Cir.1979).

■ When a claimant knows that he or she has an age discrimination claim and has received proper notice from the Equal Employment Opportunity Commission (EEOC), the claimant has no equitable basis to toll the statute of limitations, particularly when there is no excuse for the delay. *Garcia v. Ponce Federal Bank,* 979 F.2d 890 (1st Cir.1992).

■ Here, Evenson knew he had a claim and filed his claim with the EEOC on April 19, 1988, five weeks after his termination. The EEOC notified him of its decision on October 18, 1989, and informed him that he had until March 10, 1990, to bring his own claim. However, Evenson filed his age discrimination lawsuit on December 5, 1990, and fell within the three-year statute of limitations, instead of the two-year statute.

Evenson asserts that whether an older employee is replaced by a younger employee is a critical element to proving an age discrimination claim. Thus, he argues that had Farm Bureau not concealed the existence of a younger employee who was later hired by

the company, the EEOC likely would have made a different determination.

Evenson cites *Meyer v. Riegel Products Corp.*, 720 F.2d 303 (3rd Cir.1983) to support his contention that Farm Bureau misled the EEOC which in turn misled him as to a critical element in his claim. We disagree with Evenson.

In *Meyer*, the court held that equitable tolling is appropriate where the employer's own acts lulled the plaintiff into foregoing prompt attempts to vindicate his rights. The issue in *Meyer* was whether the employee actually had been misled by the employer about reasons for his termination, to the point that he had not considered filing an age discrimination claim in the first place.

Here, however, Evenson did not introduce any evidence to show that he was misled into thinking he did not have an age discrimination claim or that he was misled as to the time frame in which he had to file his suit. In fact, he made no efforts to review his file with the EEOC after it completed its investigation in October 1989.

Therefore, the trial court properly found that Evenson had to prove his claim under the "willful" standard set forth in the three-year statute of limitations.

### IV. Proper Denial of "Average Cost" Jury Instruction

An issue that may arise on retrial lies in Evenson's contention that the trial court improperly denied a jury instruction which would have stated that "[d]iscrimination based on the average cost of employing older employees as a group is unlawful." Evenson argues that failure to include this jury instruction improperly permitted the jury to conclude that Farm Bureau could legitimately dismiss him to save money. We disagree.

█ A judgment will not be reversed for refusal of the trial court to give a requested instruction if there was no resulting, substantial, prejudicial error. *See Clark v. Giacomini*, 85 Colo. 530, 277 P. 306 (1929).

█ Here, the tendered jury instruction was phrased in terms of multiple employees and would have been appropriate in a class action suit or a claim involving multiple plaintiffs. Since Evenson's claim involved only allegations of discrimination against him, the trial court properly denied the jury instruction.

The instructions given by the court were sufficient to apprise the jury that Farm Bureau could not dismiss Evenson because he cost more than a younger employee. In at least three instructions, the court informed the jury that a company cannot dismiss an employee for reasons related to his or her age. Thus, Evenson did not suffer any prejudice from the denial of his tendered jury instruction.

### V. Breach of Implied Employment Contract

Evenson next contends that the trial court improperly dismissed his claim for breach of implied employment contract. Evenson challenges the propriety of the directed verdict on the basis that a disputed issue of fact remained as to whether Farm Bureau had acted in a manner which demonstrated its intent to be bound by the manual's provisions despite a disclaimer which stated that employment was "at-will." We agree that the matter should have been presented for jury resolution.

█ Generally, an employee hired for an unspecified period of time is presumed to be an "at-will employee" whose employment may be terminated without cause or notice and such termination does not give rise to a cause of action. *Allabashi v. Lincoln National Sales Corp.*, 824 P.2d 1 (Colo.App. 1991). However, statements made in an employee handbook limiting an employer's right to discharge employees may be the basis for a breach of implied contract claim.

█ To rebut the presumption of employment "at-will" and enforce termination procedures found in an employee manual or handbook, an employee must demonstrate either that the manual or handbook resulted in a contract between the employer and the employee or that it formed the basis for a promissory estoppel claim. *Continental Airlines, Inc. v. Keenan*, 731 P.2d 708 (Colo. 1987). To establish that the manual resulted

in a contract, the employee must establish that the employer's actions manifested to a reasonable person an intent to be bound by the provisions of the manual or handbook.

Such a manifestation of willingness to be bound can be inferred if there is no disclaimer in the manual stating that it does not constitute a contract or if such disclaimer, though present, is not clear and conspicuous. *See Ferrera v. Nielsen,* 799 P.2d 458 (Colo. App.1990).

Furthermore, even if there is a disclaimer in the manual, an employer may nevertheless be found to have manifested an intent to be bound by its terms if the manual contains mandatory termination procedures or requires "just cause" for termination. *See Allabashi v. Lincoln National Sales Corp., supra* (conflict between disclaimer and other documents permits finding of implied contract); *Cronk v. Intermountain Rural Electric Ass'n,* 765 P.2d 619 (Colo.App.1988) (handbook required just cause for dismissal); *cf. Ferrera v. Nielsen, supra* (no implied contract where disclaimer appeared conspicuously at beginning of manual and in big letters under heading "Important" and no evidence was presented indicating employee's justifiable reliance on the terms of the handbook.)

If evidence in the record creates an issue as to whether an employment contract existed, then a directed verdict or summary judgment is inappropriate. *See Allabashi v. Lincoln National Sales Corp., supra.* Such was the case here.

The discharge provisions of the Farm Bureau employee manual state: "We reserve the right to terminate the employee at management discretion. Employees have been hired at the discretion of the company and their employment may be terminated at its will and at any time." The last section of the manual also contains a disclaimer provision opposite the signature page which notifies employees that "the language used in this handbook is not intended to create, nor is it to be construed as a contract between the company and any one or all of its employees." Finally, the manual's discipline procedure stated that "the steps for disciplinary action *may* be ...." (emphasis added) Thus,

these provisions, on their face, suggest that the manual was not intended to create a binding obligation.

However, several Farm Bureau managers, including the Chief Personnel Officer, testified on Evenson's behalf that they regarded the disciplinary procedures as mandatory and treated them as mandatory. The Chief Personnel Officer also testified that he met with the CEO and a supervisor regarding the need for compliance with these disciplinary procedures before terminating Evenson. This evidence supported Evenson's position that the manual's disciplinary procedures were, in fact, treated by Farm Bureau as mandatory and binding.

Thus, conflicting evidence was presented as to whether the discipline procedures had to be followed before terminating an employee.

Further, while the disclaimer provisions, are clear, they were not emphasized. Indeed, they contain nothing to make them conspicuous.

In the absence of conspicuous disclaimer provisions but with evidence that the employer thus treated the provisions as binding, whether the provisions in the manual constituted a contract between the parties is a question for the jury. *See Allabashi v. Lincoln National Sales Corp., supra.* Thus, on the facts presented, we conclude that a factual dispute was present as to whether the disciplinary procedures were contractually binding. Hence, a directed verdict on the issue of whether there was an implied employment contract was improper, and the issue must be resolved on remand.

Our decision is consistent with *Ferrera v. Nielsen, supra.* In that case, unlike the situation here, a division of this court found that the disclaimer in the employee manual was both sufficiently clear and sufficiently conspicuous to inform employees that the employer did not intend to be bound. Also, there the employee apparently presented no evidence to bring into question the applicability of the disclaimer.

## VI. Reasonableness of Actual Costs Awarded

Evenson finally asserts that the trial court erred in awarding costs to Farm Bureau because some of the costs requested by it did not constitute "actual costs" under § 13–17–202, C.R.S. (1993 Cum.Supp.) and the trial court failed to make a finding regarding the reasonableness of the costs. Since this issue may arise on retrial if there is again a verdict for Farm Bureau, we consider it now.

Section 13–17–202(1)(a)(II), C.R.S. (1993 Cum.Supp.) requires that actual costs incurred after a settlement offer be awarded to the defendant if the plaintiff rejects a settlement and fails to recover a final judgment in excess of the settlement offer. The supreme court has interpreted this statute to require "that a trial court need only award actual costs that are reasonably incurred by a party under § 13–17–202." *Scholz v. Metropolitan Pathologists, P.C.*, 851 P.2d 901, 910 (Colo.1993). In *Scholz*, the supreme court remanded the issue of costs to the trial court for a finding of reasonableness since the trial court had awarded costs without explanation.

Here, the trial court also awarded costs without any specific finding of reasonableness. Thus, under *Scholz*, if there is again a verdict for Farm Bureau, the trial court must make findings regarding the reasonableness of Farm Bureau's costs incurred after the rejection of its settlement offer.

The judgment entered on the claim of willful violation of the ADEA is reversed, and the dismissal of the claim for breach of employment contract is also reversed. The ruling that Evenson's "basic" ADEA discrimination claim is barred by the statute of limitations is affirmed, and the cause is remanded for further proceedings consistent with this opinion.

TURSI and NEY, JJ., concur.