**Cathy ORBACK, Allen Orback, Matilde Villarreal, and Carol Sanchez, Plaintiffs,**

v.

**HEWLETT–PACKARD COMPANY, Defendant.**

**Civ. A. No. 93–K–1376.**

United States District Court, D. Colorado.

Dec. 6, 1995.

---

Lee T. Judd, Andrew T. Brake, P.C., Denver, Colorado, for Plaintiffs/Petitioners.

Dennis A. Gladwell and Mary Porter, Gibson, Dunn & Crutcher, Denver, Colorado, for Defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Five former employees of Hewlett–Packard Company (HP) assert state law breach of contract and promissory estoppel against their former employer. Plaintiffs contend they relied to their detriment on representations set forth in HP's Personnel Policies and Guidelines (the "PP & G") of continued employment and equitable treatment in discipline and termination. Plaintiffs maintain these policies gave rise to an implied contract of employment, which HP was bound to follow and breached when it either fired or forced them from their jobs. Three of the Plaintiffs assert additional claims for constructive discharge.

HP moves for summary judgment on all claims. HP contends Plaintiffs were "at will" employees terminable without cause or notice, and argues none has made a sufficient preliminary factual showing that HP—either through its conduct or by promulgating the PP & G—intended to alter that status by forming a contract as would justify the submission of Plaintiffs' claims to a jury.

Jurisdiction is proper under 28 U.S.C. § 1332. I grant HP's motions.

### I. BACKGROUND

#### A. Plaintiffs' Claims

##### 1. The Orbacks

Cathy Orback began her employment with HP on June 10, 1979. She performed well, received promotions, and ultimately obtained

a position in management. She claims that she began experiencing "difficulty" with her supervisor in 1990 and 1991. In June 1991, Ms. Orback underwent surgery for cancer and was off work for approximately eight weeks. During her absence, Ms. Orback claims she was told she had been replaced, removed from management and assigned to an unspecified position. Given the uncertainties of her employment, Ms. Orback asserts HP suggested her best option was to resign and participate in the Voluntary Severance Incentive Program ("VSI"). Faced with the Hobson's choice of accepting VSI or risking displacement, Ms. Orback chose VSI.

Allen Orback began work at HP in September of 1983 as a temporary employee for Western Temporary Services. Within six months, Mr. Orback began working full time as an HP employee. He performed competently, receiving several performance ratings of "very good" during the course of his employment.

During the course of his wife's illness, Mr. Orback became depressed and withdrawn at work. He was confronted by HP and told this behavior was affecting his work. He claims he was given a written warning, which he refused to sign on grounds it contained "false" information. Shortly thereafter, Mr. Orback asserts HP presented him with the options of either taking VSI, signing the false written warning or being fired. Feeling HP was giving him no choice but to leave, Mr. Orback consulted with his wife and accepted VSI.

### 2. Carol Sanchez

Carol Sanchez began work for HP in August of 1976. Pointing to several incidents of alleged verbal abuse and disparate treatment, Sanchez claims that for the last year and a half of her employment at HP she felt intimidated by and in constant fear of her supervisor, Bob Amans. She believed Amans was setting her up for termination by issuing a wrongful verbal warning and singling her out for performance tracking. The work environment deteriorated to such an extent that Sanchez applied for leave under the Voluntary Time Off ("VTO") program. When she returned after three months, she elected to participate in VSI rather than face continued threats of termination from Amans.

### 3. Matilde Villarreal

Matilde Villarreal began work for HP as early as 1963. After taking time under HP's Flexible Time Off ("FTO") program, Villarreal's supervisor gave her written warning for abusing this privilege. Villarreal protested the warning to the Personnel Department. HP's Personnel Department concluded the written warning was premature because Villarreal had never been given coaching or a verbal warning consistent with the company's disciplinary procedures.

Eventually, Villarreal did receive written notice and was placed on probation for alleged abuses of the FTO program. On January 5, 1993, Villarreal overslept and was late for work. Although Villarreal claims she complied with all the terms of her probation, HP terminated her employment.

### B. HP's Motions for Summary Judgment

In two separate motions for summary judgment (the first directed to the Orbacks and Sanchez, the second to Villarreal) HP denies it constructively discharged any of the Plaintiffs. With respect to the Orbacks and Sanchez, HP contends each has admitted their decision to participate in VSI was voluntary. With respect to Villarreal, HP contends it complied with its disciplinary procedures when it terminated her. Additionally, and of concern in the instant motions for summary judgment, HP denies it had any contract with these Plaintiffs or breached any alleged promises in the manner in which it disciplined or treated them.

## II. STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Genuine factual issues must be supported by "more than a mere scintilla of evidence." *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir.1993) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986)). "To avoid summary judgment, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. Summary judgment may be granted if the evidence is merely colorable or is not significantly probative." *Id.*

### III. *MERITS*

■ A federal court sitting in diversity must apply the choice of law principles of the forum state. *Shearson Lehman Bros., Inc. v. M & L Invs.*, 10 F.3d 1510, 1514 (10th Cir.1993). Here, this requires application of Colorado law. *Id.*

### A. *Breach of Implied Contract*

■ Under Colorado law, an individual hired for an indefinite period of time is an at-will employee whose employment can be terminated by either party without cause and without notice. Generally, an at-will employee's termination will not give rise to a cause of action. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo.1987). An employer may be held liable for the discharge of an otherwise at-will employee, however, where an implied contract arises out of company policy or employment manuals, or where an employee relies on the policies and manuals to his detriment. *Id.* at 711–12, *applied in Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir.1994).

■ To succeed on an implied contract theory under Colorado law, a discharged employee must first show that in promulgating the manual or policy at issue, the employer intended to make an offer to the employee: " '[T]hat is, the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain.' " *Vasey*, 29 F.3d at 1464 (quoting *Continental*, 731 P.2d at 711–12, and ruling employment policies did not give rise to implied employment contract). An offer in the form of an employment manual must be communicated to the employee to be effective, *id.*, and must be " 'sufficiently definite to enable the court to determine whether the contract has been performed.' " *Id.* (quoting *Stice v. Peterson*, 144 Colo. 219, 355 P.2d 948, 952 (1960)). Once the employee establishes the employer's intent to be bound by its procedures, he must go on to show his continued employment constituted acceptance of and consideration for those procedures. *Id.* (citing *Continental* 731 P.2d at 711).

■ While the existence of an implied contract is normally a factual inquiry for the jury, *id.* (citing *Tuttle v. ANR Freight Sys., Inc.*, 797 P.2d 825, 828 (Colo.App.1990)), the issue may be decided as a matter of law if (1) there is a valid disclaimer stating the policies are not intended to create a contract, *see Therrien v. United Air Lines, Inc.*, 670 F.Supp. 1517, 1522 (D.Colo.1987); (2) the alleged promises are nothing more than "vague assurances," *see Vasey*, 29 F.3d at 1464–65; or (3) if the undisputed facts otherwise "indicate[ ] that the employer did not intend the manual to operate as a contractual offer to the employee." *Id.* HP contends all three circumstances exist here.

■ HP's PP & G provides for a four-step "corrective action process" for disciplining employees. The manual states the process "will generally [be] follow[ed]," but acknowledges that "exceptions may be appropriate" under circumstances "not limited to new employees and employees who have been the subject of prior corrective action efforts." Under those circumstances, employees may "be terminated immediately." The PP & G is not distributed to employees, only to managers. The corrective action process is specifically described as a "guide to managers in dealing with unacceptable performance."

■ Nevertheless, Plaintiffs contend management viewed, and they understood, the process was mandatory. Proper analysis of their contract claims, they argue, requires case by case consideration not only of HP's policies, but also of Plaintiffs' "understanding" of them. I disagree. The issue under Colorado law is the *employer's* intent to enter into a binding contractual relationship with an otherwise at-will employee, not the employee's subjective "understanding" of

that intent.[1] *Continental,* 731 P.2d at 711–12.

As HP points out in its briefs in support of summary judgment, the Tenth Circuit and various judges of this court have ruled in five different cases that the policies in HP's PP & G do not contractually obligate the company to follow any set procedures for terminating employees. *See* Br.Supp.Mot.Summ.J. (Orback & Sanchez) at 27.[2] Based on my review of the PP & G and the evidence presented by Plaintiffs, I agree with these prior rulings. There is no dispute the PP & G is a supervisor's, not an employee, manual, and was distributed to management only. It expressly allows for the exercise of discretion in administering the corrective action process.[3] Moreover, it contains a disclaimer on the first page in bold type. Under these circumstances, I find no reasonable trier of fact could conclude the policies manifested an in-

tent on the part of HP to form a contract based on their terms. Because I would reach this conclusion even if the PP & G contained no disclaimer, Plaintiffs' arguments regarding the sufficiency of that provision are unavailing.[4] Plaintiffs' claims for breach of implied contract fail as a matter of law.

## B. *Promissory Estoppel*

Alternatively, Plaintiffs claim they should be entitled to enforce the termination procedures under a theory of promissory estoppel. To support a claim for promissory estoppel based on policy provisions in an employee handbook, plaintiff must demonstrate that (1) his employer reasonably should have expected employees to consider the handbook as a commitment to follow the policy stated; (2) the employee reasonably relied on the policy to his detriment; (3) and injustice could only be avoided by enforce-

1. The employee's "understanding" may, of course, be relevant to another element of his claim, i.e., that his continued employment constituted an acceptance of the terms of the policies as part of an implied contract. *Vasey,* 29 F.3d at 1465 (plaintiff who admitted he "paid little attention" to policy disproved this element of implied contract claim).

2. Citing *Witty v. Hewlett–Packard Co.,* No. 92–S–1105 (D.Colo. Sept. 29, 1993) (Sparr, J.), *relevant portions of oral ruling attached as* Ex. 17, HP's Br.Supp.Mot.Dismiss (granting HP's motion for summary judgment on grounds that (1) PP & G was supervisor's manual, not employee manual, and therefore HP did not manifest an intent to form contract, (2) PP & G disclaimer precluded intent to form contract, and (3) PP & G allowed for exercise of discretion in discipline which could not form basis of contract); *Bell v. Hewlett–Packard Co.,* (Matsch, J.) (Ex. 18) (granting HP's motion for summary judgment on grounds that neither the handbook nor representations by company constituted specific promise capable of enforcement); *Bennett v. Hewlett–Packard,* No. 87–M–0211 (D.Colo. June 13, 1988) (Ex. 19) (PP & G did not create due process rights for employee terminated for gross misconduct); *Smith v. Hewlett–Packard Co.,* No. 83–M–2180 (D.Colo. Feb. 28, 1985) (Matsch, J.) (Ex. 20) (same), *aff'd* No. 85–1467 (10th Cir. Feb. 29, 1988) (Ex. 21) (because disciplinary policies discretionary, no genuine issue of material fact to resolve at trial); *Weber v. Hewlett–Packard,* No. 83–JM–2179 (D.Colo. April 24, 1985) (Moore, J.) (Ex. 22) (PP & G held not to "dictate" rules to management, "simply sets forth ... goals and aims which the company hopes to achieve").

3. Plaintiffs' attempts to call this into question with selective quotes from the depositions of

various members of management are unpersuasive. Without exception, these managers described the four-step corrective action process as a policy they "in *general,*" must go through. *See* Pls.' Response Mot.Summ.J. (Orbacks & Sanchez) at 2–4 & Ex. A (deposition testimony of HP Human Resources Manager Carolyn Tuttle); *id.* at Ex. B (testimony of former manufacturing manager Richard Spangler); *id.* at 10–11 (testimony of production associate John Hsu). Similarly, Villarreal's argument that HP manifested an intent to be bound by the four-step process because it withdrew a written warning it had issued her because it had failed first to give her a verbal warning is also unpersuasive. Public policy of encouraging employer adherence to discretionary progressive discipline procedures surely would suffer if such adherence gave rise to a cause of action for damages whenever the employer, in its discretion, elected under other circumstances not to adhere to the procedures.

4. Plaintiffs rely on *Evenson v. Colorado Farm Bureau Mut. Ins. Co.,* 879 P.2d 402 (Colo.App. 1993) to argue the fact the PP & G contained disclaimer is not dispositive on the issue of its intent to form a contract based on the manual's terms. The observation is accurate, as far as it goes. The *Evenson* court, however, made clear that an employee will overcome the effect of a disclaimer in an employer's policy manual only if the manual otherwise manifests an intent on the part of the employer to be bound. *Id.* at 409 (citing *Allabashi v. Lincoln Nat'l Sales Corp.,* 824 P.2d 1 (Colo.App.1991) (conflict between disclaimer and other documents permits finding of implied contract). The PP & G at issue manifests no such intent.

ment of the policy. *Continental,* 731 P.2d at 712. Again, the focus of the first showing is the ***employer's*** reasonable expectation or intent in promulgating the policies. If a plaintiff fails to create a triable issue as to the employer's intent to be bound by the terms of disciplinary policies, he also fails to create a triable issue as to the employer's reasonable expectation of reliance. *See Johnson v. Cadillac Plastic Group, Inc.,* 908 F.Supp. 847 (D.Colo.1995) (applying *Continental,* 731 P.2d at 712 (unless preliminary factual showing is sufficient to overcome the presumption of employment terminable at will, promissory estoppel claim should fail)). Based on my analysis above, Plaintiffs have failed as a matter of law to establish the first element of a claim for promissory estoppel. HP's motion for summary judgment is granted as to this claim as well.

### C. *Constructive Discharge*

■ The claims of Allen and Cathy Orback and Carol Sanchez alleging constructive discharge fall with their contract claims. Because these plaintiffs have failed to rebut the presumption of at-will employment, their discharge, however involuntary, does not give rise to a cause of action under Colorado law. *See, e.g., Continental,* 731 P.2d at 711.

### IV. *CONCLUSION*

For the foregoing reasons,

IT IS ORDERED that Defendant Hewlett–Packard Company's Motion for Summary Judgment Against Cathy Orback, Allen Orback and Carol Sanchez is GRANTED.

IT IS FURTHER ORDERED THAT Defendant Hewlett–Packard Company's Motion for Summary Judgment Against Matilde Villarreal is also GRANTED.

The trial date in this matter presently set for January 8, 1996 is STRICKEN, as are all related pretrial conferences.