**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 24, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KATHRYN ROMSTAD; MARGARETHE
BENCH,

     Plaintiffs - Appellants,

v.

THE CITY OF COLORADO SPRINGS, a
municipal corporation, and in its capacity
as a governmental enterprise, d/b/a
Memorial Health System,

     Defendant - Appellee.

No. 15-1334
(D.C. No. 1:14-CV-03508-CMA-CBS)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **KELLY**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

     Plaintiffs Kathryn Romstad and Margarethe Bench are employees at the Memorial

Hospital System ("MHS"), a system of hospitals and clinics located in Colorado. Until

September 30, 2012, the City of Colorado Springs ("the City") owned and operated

MHS. As employees at MHS, Plaintiffs participated in the Public Employee Retirement

Association (PERA), a defined benefits pension plan that provides retirement and other

---

    * This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

benefits to employees of the state, local governments, and schools.  Colo. Rev. Stat. §§ 24-51-101 *et seq.*

On October 1, 2012, the City leased MHS's operations to University of Colorado Health ("UC Health"), a non-profit organization.  Plaintiffs became employees of UC Health, and their membership in PERA ceased.  UC Health provided them with a replacement pension plan.

Plaintiffs sued the City.  Their Second Amended Complaint—the pleading relevant to this appeal—alleged breach of contract and a due process violation under 42 U.S.C. § 1983.  The district court dismissed the action under Federal Rule of Civil Procedure 12(b)(6).  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A.  *Legal Background Regarding PERA*

PERA, a defined benefits pension plan, provides retirement and other benefits to five "divisions":  "state," "school," "local government," "judicial," and "Denver public schools."  Colo. Rev. Stat. § 24-51-201.  Each division has its own trust fund.  *See* § 208.  "The local government division trust fund . . . consists of contributions, payments, and interest paid by members and employers of the local government division, in addition to a proportional share of investment income earned thereon . . . . "  § 208(c).

The PERA statute addresses how employers affiliate with and disaffiliate from the plan.  Under § 309 ("Affiliation by public entities"), "any political subdivision within the state of Colorado or any public agency created by the state or any of its political subdivisions may make application to the board to affiliate with the association."  If an

entity affiliates, its employees are generally required to participate in PERA. § 301 ("Required membership") (providing generally, "All employees who hold positions subject to membership and whose salaries are paid by an employer shall become members as a condition of employment . . . . ").

An employer in the local government division may disaffiliate from PERA in certain circumstances. Section 313 provides:

> Any political subdivision within the state of Colorado or any public agency created by such a political subdivision that is an employer affiliated with the association pursuant to the provisions of section 24-51-309 and that is assigned to the local government division may make application to the board [of PERA] to terminate the affiliation of the employer with the association.

An application to disaffiliate must include "an ordinance or resolution that has been adopted by the governing body of the employer and that has been approved by at least sixty-five percent of the employees of the employer who are members." § 313(1). Generally, applications satisfying these requirements "shall be approved by the [PERA] board." § 313(2). Applications that do not meet these requirements "shall not be approved by the [PERA] board." *Id.*

Finally, the PERA statute specifically addresses the lease of a public hospital. Section 311 provides, "employees of a public hospital which is sold, leased, or otherwise transferred to a nonprofit corporation organized pursuant to the laws of this state for the purpose of conducting a hospital, . . . may continue membership in [PERA] if" three conditions are satisfied: (1) "the [PERA] board determines, in its sole discretion, that continued membership will not adversely affect its qualified governmental plan status";

- 3 -

(2) "the transfer agreement provides for continuance of membership"; and (3) "the new employer agrees to submit to the association the appropriate amount of employer and member contributions and disbursements."

### B. *Employee Handbook and PERA Summary*[1]

While employed at MHS,[2] Plaintiffs received an employee handbook ("Handbook"). The Handbook began with the following "Reservation of Rights":

> The contents of this handbook are presented as a matter of information only. While Memorial Hospital believes wholeheartedly in the plans, policies and procedures described here, they are not conditions of employment. Memorial Hospital reserves the right to modify, revoke, suspend, terminate or change any or all such plans, policies or procedures, in whole or in part, at any time, with or without notice. The language used in this handbook is not intended to create, nor is it to be construed to constitute a contract between the Hospital and any or all of its employees.

App. at 152. The Handbook further stated,

> As an employee of a City-owned facility, you will participate in a retirement plan under the Public Employees' Retirement Association (PERA). A percentage of your pay, before it is taxed, is contributed to PERA. The Hospital also contributes to this fund for you. Participation is mandatory for all employees.

---

[1] Plaintiffs attached the Handbook and the PERA Summary to their Second Amended Complaint. "In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted).

[2] The Second Amended Complaint inconsistently alleged Plaintiffs' employer was MHS, *see, e.g.*, *id.* at 133, ¶ 6 (alleging Plaintiffs were "employees of the Memorial Health System"), and was the City, *see, e.g.*, *id.* at 134, ¶ 17 (alleging Plaintiffs were "employed by the City"). As explained below, any distinction is immaterial to the outcome of this appeal.

*Id.* at 164.

Plaintiffs also received a document titled, "A Summary of the Colorado PERA Defined Benefit Plan" ("PERA Summary"). *Id.* at 169. The PERA Summary stated: "[PERA] provides retirement and other benefits to employees of the State of Colorado; all school districts; the judicial system; and numerous municipalities, special districts, and other local government entities." *Id.* at 170. It noted, "PERA operates by authority of the Colorado General Assembly and is administered under Title 24, Article 51 of the Colorado Revised Statutes." *Id.* at 171. The remainder of the PERA Summary explained PERA's benefit structure.

C. ***Lease Documents and Plaintiffs' Discontinued Participation in PERA***

On July 2, 2012, the City and UC Health signed (1) a Health System Operating Lease Agreement and (2) an Integration and Affiliation Agreement. The latter stated, "As of the Effective Date, . . . one or more of the UC Health Parties or their Affiliates, UCHA or Children's Hospital, as applicable, shall offer employment, for not less than a six (6) month period, to substantially all MHS Employees . . . . " *Id.* at 199. On October 1, 2012, the lease became effective, and UC Health became Plaintiffs' new employer. Plaintiffs' participation in PERA ceased without an employee vote.

D. ***Procedural History***

Plaintiffs sued the City in the United States District Court for the District of Colorado. The Second Amended Complaint alleged a breach of contract under Colorado common law and a due process violation under § 1983. It alleged Plaintiffs had a contractual right to PERA benefits under (1) the Handbook and PERA Summary and

(2) § 313, claiming either would be sufficient to create a contract. It asserted the City breached this contract by terminating Plaintiffs' participation in PERA when it leased MHS. The Second Amended Complaint further alleged Plaintiffs had a constitutionally protected property right to continue participating in PERA. It asserted the City violated Plaintiffs' due process rights by depriving them of continued participation without holding an employee vote under § 313.[3] Plaintiffs brought these claims on behalf of themselves and a putative class.

The district court granted the City's motion to dismiss under Rule 12(b)(6). It ruled Plaintiffs failed to state a breach of contract claim because they did not allege the existence of a contract. It also ruled Plaintiffs failed to state a due process claim because they did not allege a constitutionally protected right to continue participating in PERA.

## II. **DISCUSSION**

We review de novo the district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.*, 771 F.3d 697, 700 (10th Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the

---

[3] Neither claim alleged the loss of future benefits based on Plaintiffs' pre-lease contributions to PERA. The two claims alleged only that the City violated Plaintiffs' right to continue participating in PERA through future contributions.

- 6 -

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## A.  *Breach of Contract Claim*

We affirm the district court's dismissal of Plaintiffs' breach of contract claim. Plaintiffs failed to state a claim because they did not allege the existence of a contract based on (1) the Handbook and PERA Summary or (2) § 313.

### 1.  **Legal Background**

To plead a breach of contract in Colorado, a plaintiff must allege "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (citations omitted); *see also Long v. Cordain*, 343 P.3d 1061, 1067 (Colo. App. 2014).

#### a.  *Contractual Rights Based on Employment Manuals*

To establish the first element—the existence of a contract—based on an employment manual, "the employee must establish that the employer's actions manifested to a reasonable person an intent to be bound by the provisions of the manual or handbook." *Evenson v. Colo. Farm Bureau Mut. Ins. Co.*, 879 P.2d 402, 408-09 (Colo. App. 1993).  An employee manual or handbook does "not create an implied contract where a clear disclaimer of any contractual rights appears." *Jaynes v. Centura Health Corp.*, 148 P.3d 241, 248 (Colo. App. 2006), *as modified on denial of reh'g* (June 29, 2006) (quotations omitted).  "Whether a contract disclaimer is clear and conspicuous is a question of law for the court." *Id.*

*b. Contractual Rights Based on Statutes*

Colorado and its municipalities may contract by statute or ordinance. *See Justus v. State*, 336 P.3d 202, 208-09 (Colo. 2014) (explaining the Colorado legislature may contract by statute); *Colorado Springs Fire Fighters Association, Local 5 v. City of Colorado Springs*, 784 P.2d 766, 773 (Colo. 1989) (explaining a municipality in Colorado may contract by ordinance). But to create such a contract, the statute or ordinance must apply in the first instance. As explained below, § 313 did not create a contract because it did not apply to the circumstances alleged here.

2. **Analysis**

Plaintiffs failed to allege a contract based on (1) the Handbook and the PERA Summary or (2) § 313.

*a. Handbook and PERA Summary*

The Handbook and the PERA Summary did not create a contract whether considered individually or together.

First, neither document plausibly "manifested to a reasonable person an intent to be bound by the provisions of the manual or handbook." *Evenson*, 879 P.2d at 408-09. Both included descriptive language; neither included promissory language. The Handbook described participation only as "mandatory for all employees." App. at 164. And the PERA Summary explained only that PERA "provides retirement and other benefits to employees of . . . local government entities"; it "operates by authority of the Colorado General Assembly and is administered under Title 24, Article 51 of the

Colorado Revised Statutes"; and it provides benefits in accordance with a benefits structure, detailed in the PERA Summary. *Id.* at 170-71.

Second, the Handbook included a clear and conspicuous disclaimer precluding a contract. *See Jaynes*, 148 P.3d at 248. It stated, "Memorial Hospital reserves the right to modify, revoke, suspend, terminate or change any or all such plans, policies or procedures, in whole or in part, at any time, with or without notice." App. at 152. The Handbook further stated it "is not intended to create, nor is it to be construed to constitute a contract between the Hospital and any or all of its employees." *Id.*

Plaintiffs therefore failed to allege a contract based on the Handbook or the PERA Summary, considered individually or together.

### b. S*ection 313*

Plaintiffs alleged § 313 created a contractual right to continue participating in PERA. We disagree.

"When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002). The Colorado Supreme Court has not interpreted § 313. We predict it would conclude § 313 did not create a contract here because it did not apply in the first instance.

Section 313 provides:

(1) Any political subdivision within the state of Colorado or any public agency created by such a political subdivision that is an employer affiliated with the association pursuant to the provisions of section 24-51-309 and

that is assigned to the local government division may make application to the board to terminate the affiliation of the employer with the association. The application shall be made by submitting to the board an ordinance or resolution that has been adopted by the governing body of the employer and that has been approved by at least sixty-five percent of the employees of the employer who are members. Such employee members of the employer shall be notified in writing of the provisions of section 24-51-321 prior to a vote on an ordinance or resolution to terminate the affiliation of the employer with the association.

(2) All applications for termination of affiliation shall comply with the requirements set forth in this section, and, except as otherwise provided in this part 3, all applications meeting such requirements shall be approved by the board. Applications which do not meet the requirements of this section shall not be approved by the board. . . .

Plaintiffs argue § 313 generally governs disaffiliation by a PERA employer and, because MHS was a PERA employer that disaffiliated on October 1, 2012, § 313 therefore applied. The City contends the provision did not apply because the City, not MHS, was the "employer" under § 313, and the City did not disaffiliate from PERA in its entirety. The district court agreed with the City. We need not decide whether the City or MHS was Plaintiffs' "employer" under § 313. We think the Colorado Supreme Court would conclude § 313 was inapplicable either way.

      i.   <u>Assuming the City was Plaintiffs' employer</u>

Assuming "the employer" was the City, § 313 did not apply because it governs attempts "to terminate the affiliation of the employer with the association." § 313(1). The City did not attempt to terminate its affiliation with PERA. It ended only MHS's participation in PERA. Section 313 was therefore inapplicable.

- 10 -

ii. Assuming MHS was Plaintiffs' employer

Assuming "the employer" was MHS, § 313 again did not apply. We reach this conclusion by examining § 313 within the context of the PERA statute. *See Young v. Brighton Sch. Dist. 27J*, 325 P.3d 571, 576 (Colo. 2014) ("[W]e read the statutory design as a whole, giving consistent, harmonious, and sensible effect to all of its parts. . . . Often [one of] the best guides to legislative intent [is] the context in which the statutory provisions appear . . . . "); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (explaining that, in interpreting statutory language, we look to "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole").

In that regard, § 311 is particularly relevant. It governs PERA membership of "employees of a public hospital which is sold, leased, or otherwise transferred to a nonprofit corporation." For two reasons, this provision indicates § 313 does not govern disaffiliation by a public hospital leased to a nonprofit corporation.

First, if § 313 governed the lease of a public hospital to a nonprofit corporation, §§ 311 and 313 would conflict. "When interpreting two statutory sections, we must attempt to harmonize them in order to give effect to their purposes." *State v. Nieto*, 993 P.2d 493, 510 (Colo. 2000).

Section 311 provides:

[E]mployees of a public hospital which is sold, leased, or otherwise transferred to a nonprofit corporation organized pursuant to the laws of this state for the purpose of conducting a hospital, . . . may continue membership in [PERA] if [1] the [PERA] board determines, in its sole discretion, that continued membership will not adversely affect its

- 11 -

qualified governmental plan status and [2] if the transfer agreement provides for continuance of membership and [3] the new employer agrees to submit to the association the appropriate amount of employer and member contributions and disbursements pursuant to part 4 of this article.

If § 313 governed disaffiliation when a public hospital is leased to a nonprofit corporation, § 313 would contradict § 311. Under § 313, hospital employees would continue participating in PERA unless 65% of them voted for disaffiliation. Under § 311, employees would stop participating in PERA unless three conditions were satisfied: (1) "the [PERA] board determines, in its sole discretion, that continued membership will not adversely affect its qualified governmental plan status"; (2) "the transfer agreement provides for continuance of membership"; and (3) "the new employer agrees to submit to the association the appropriate amount of employer and member contributions and disbursements." In short, the employees' PERA membership would continue by default under § 313, but it would terminate by default under § 311. To avoid this contradiction, we interpret § 313 as inapplicable to disaffiliation of a public hospital when it is leased to a nonprofit corporation.

Second, even if the terms "political subdivision" or "public agency" in § 313 include a "public hospital," § 313 would still not apply under the canon that "a specific provision prevails over a general one." *Martin v. People*, 27 P.3d 846, 852 (Colo. 2001). Section 313 generally governs disaffiliation by political subdivisions and public agencies. Section 311 specifically addresses PERA membership when "a public hospital . . . is sold, leased, or otherwise transferred to a nonprofit corporation." For the lease of a public

hospital, § 311 would govern whether PERA membership continues, not § 313.[4] As

Plaintiffs clarified at oral argument, they have not asserted a contractual right under

§ 311, nor did the Second Amended Complaint allege satisfaction of § 311's three

requirements.

We therefore conclude § 313 is inapplicable and created no contract.[5]

\*　　\*　　\*　　\*

---

[4] Plaintiffs' counsel suggested for the first time at oral argument that MHS was a "public agency" because the City owned and operated it. Our application of the canon that the specific governs the general disposes of this argument. Moreover, arguments raised for the first time at oral argument are waived, *United States v. Magnesium Corp. of Am.*, 616 F.3d 1129, 1144 n.17 (10th Cir. 2010) ("We generally will not pass upon issues raised for the first time at oral argument on appeal . . . ." (citation omitted)).

[5] Our conclusion that § 313 is inapplicable conflicts with *City of Colorado Springs v. Pub. Employees Retirement Ass'n of Colo.*, No. 2012-cv-5714 (Colo. Dist. Ct. Feb. 10, 2014) (summary judgment order). In that case, a state trial court held § 313 governed MHS's disaffiliation from PERA. We decline to adopt the state trial court's conclusion for two reasons.

First, its conclusion is not binding. We are bound only by the Colorado Supreme Court's statutory interpretations. *See Johnson*, 305 F.3d at 1118 ("When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule."). Nor does claim or issue preclusion apply; Plaintiffs were not parties to the state court action. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (explaining that, to determine the preclusive effect of a state court judgment in a subsequent federal lawsuit, a federal court applies the preclusion law of the state in which judgment was rendered); *Byrd v. People*, 58 P.3d 50, 53, 54 n.4 (Colo. 2002) (explaining claim and issue preclusion both require identical parties).

Second, its reasoning is unpersuasive as to the issue presented here; it offers no statutory interpretation of § 313.

Because Plaintiffs failed to allege the existence of a contract based on (1) the Handbook and the PERA Summary or (2) the PERA statute, their breach of contract theory fails.[6]

## B. *Due Process Claim*

Plaintiffs argue they had a constitutionally protected property right to continue participating in PERA. They contend the City deprived them of that right without due process when it leased MHS and did not hold an employee vote under § 313. As the district court concluded, Plaintiffs' due process claim fails because they did not allege a constitutionally protected right to continue participating in PERA.

### 1. Legal Background

The Due Process Clause "'provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures.'" *Schulz v. City of Longmont*, 465 F.3d 433, 443 (10th Cir. 2006) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)). To determine whether a plaintiff was denied procedural due process, we ask: "(1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Id.* (quotations omitted).

---

[6] Plaintiffs' appeal brief additionally asserts an "alternative contract arising under class members' reliance on MHS's promises" that "if the lease transaction resulted in an end to PERA, it would be replaced with an equivalent or better plan." Aplt. Br. at 38, 40. Plaintiffs did not assert this "alternative contract" theory in district court, and they do not argue plain error. Their alternative-contract argument is therefore waived. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal—surely marks the end of the road for an argument for reversal not first presented to the district court.").

To have a protected property interest in a benefit,

> a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. Such entitlements are of course not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. A benefit is not a protected entitlement if government officials may grant or deny it in their discretion.

*Id.* at 443-44 (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (brackets omitted)). "State law sources for property interests can include statutes, municipal charters or ordinances, and express or implied contracts." *Id.* at 444 (quotations omitted). Finally, the "determination of whether an individual has a *protected* property interest under state law is ultimately a matter of federal constitutional law." *Id.* (emphasis in original).

2. **Analysis**

Plaintiffs attempted to allege a protected property interest based on (1) the Handbook and PERA Summary and (2) the PERA statute, claiming either would be sufficient to create a contract. Neither creates a constitutionally protected property right.

First, the Handbook and the PERA Summary, considered individually or together, did not create a contract for the reasons explained above.

Second, nothing in the PERA statute entitled Plaintiffs to continue participating in PERA. Under § 311, employees of a public hospital leased to a nonprofit corporation "may continue membership in the association" only if the three conditions discussed above are satisfied. Plaintiffs did not allege those conditions were satisfied. They therefore had no statutory right to continue participating in PERA.

- 15 -

Plaintiffs' citations to *Colo. Ass'n of Pub. Employees v. Bd. of Regents of Univ. of Colo.*, 804 P.2d 138 (Colo. 1990) ("CAPE") and *Konno v. City of Hawai'i*, 937 P.2d 397 (1997), *as modified on reconsideration* (May 13, 1997), are unpersuasive. First, *CAPE* is inapposite because it addressed the constitutionality of a bill reorganizing the University of Colorado University Hospital into a private, nonprofit corporation under the Colorado Constitution's state personnel provisions—provisions that are not at issue here. Second, *Konno*, a non-binding case decided by the Supreme Court of Hawaii, recites tests for determining the validity of privatization contracts. It is inapposite because Plaintiffs do not challenge the lease of MHS; they argue only that Plaintiffs have a right to continue participating in PERA post-lease.

Finally, Plaintiffs argue the district court erroneously determined whether a property right existed by focusing on the lease after rather than before it took effect. Plaintiffs misapprehend the due process analysis. The question is whether Plaintiffs had a right to continue participating in PERA after the lease took effect. If they did, the City could not deprive them of that right without due process. *See Cleveland Bd. of Educ.*, 470 U.S. at 538 ("Respondents' federal constitutional claim depends on their having had a property right in continued employment. If they did, the State could not deprive them of this property without due process." (citations and footnote omitted)). For the reasons explained above, Plaintiffs failed to allege a right to continue participating in PERA post-lease. They therefore failed to state a due process claim.

## III. **CONCLUSION**

For the foregoing reasons, we affirm the district court's dismissal of Plaintiffs'

Second Amended Complaint.[7]

ENTERED FOR THE COURT,


Scott M. Matheson, Jr.
Circuit Judge

---

[7] We also affirm the district court's dismissal of Plaintiffs' claim for injunctive relief, which Plaintiffs listed as an independent claim in their Second Amended Complaint. An injunction is not an independent cause of action; it is a "remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise." *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005) (quotations omitted). Plaintiffs' failure to state a claim is therefore fatal to their request for injunctive relief.