**Diana I. MARIANI, Plaintiff–Appellant,**

**v.**

**ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE d/b/a Blue Cross and Blue Shield of Colorado, a Colorado corporation in good standing, and Samuel Weidman, individually, Defendants–Appellees.**

Nos. 93CA0837, 93CA1154.

Colorado Court of Appeals,
Div. V.

Dec. 29, 1994.

Rehearing Denied Feb. 23, 1995.

Certiorari Granted Aug. 28, 1995.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1994 Cum.Supp.).

Fowler, Schimberg & Cowman, P.C., Daniel M. Fowler, Catherine A. Tallerico, Denver, for plaintiff-appellant.

Kennedy & Christopher, P.C., Richard B. Caschette, Lisa B. Heintz, Dean A. McConnell, Denver, for defendant-appellee Rocky Mountain Hosp. and Medical Service d/b/a Blue Cross and Blue Shield of Colorado.

No appearance for defendant-appellee Samuel Weidman.

Opinion by Judge RULAND.

In an action to recover damages for termination of her employment, plaintiff, Diana I. Mariani, appeals from the judgment entered on a directed verdict in favor of defendants, Rocky Mountain Hospital and Medical Service and Samuel Weidman. Plaintiff sought recovery based upon both an alleged breach of implied contract and a tort theory of discharge in violation of public policy. She also appeals from a judgment dismissing her

promissory estoppel claim. Defendants cross-appeal the trial court's order limiting the award of costs allegedly incurred in this litigation. We affirm in part, reverse in part, vacate in part, and remand for a new trial.

Defendant Rocky Mountain Hospital and Medical Service conducts business under the name of Blue Cross and Blue Shield of Colorado as a non-profit hospital and health care corporation. Plaintiff is licensed in Colorado as a certified public accountant and was employed by Blue Cross as Manager of General Accounting.

Approximately two years after plaintiff was employed, defendant Weidman was employed in the position of Controller and thus became plaintiff's supervisor. At that time, plaintiff was assigned a new position titled Manager of General Accounting and Special Projects. Plaintiff was terminated approximately six months later, ostensibly on the basis that her job was being eliminated.

As pertinent here, plaintiff brought suit claiming that she was wrongfully discharged because of defendants' violation of an implied contractual duty to follow disciplinary procedures in the "You Book," issued to each of the employees as well as the breach of certain other alleged commitments to plaintiff. In the alternative, plaintiff alleged entitlement to recovery based upon the doctrine of promissory estoppel.

Plaintiff also claimed that the termination of her employment was prompted by her reporting of, and objection to, certain illegal acts by Colorado Blue Cross, and thus, she asserted that her discharge violated public policy. Plaintiff finally alleged a claim for damages against Weidman individually based upon outrageous conduct.

Following presentation of plaintiff's evidence, the trial court dismissed all of her claims except the claim against Weidman for outrageous conduct. The jury entered a verdict in favor of Weidman on this claim. Plaintiff does not appeal from the judgment entered on the outrageous conduct verdict.

## I

■ Plaintiff first contends that the trial court erred in directing a verdict upon her claim for wrongful discharge based upon her theory that she was terminated in violation of public policy for her refusal to participate in illegal activities. We agree.

If we view the evidence in the light most favorable to plaintiff, as we must, the record reflects that plaintiff was assigned to work on a proposed "merger" among the Colorado, New Mexico, and Nevada Blue Cross entities. Plaintiff was directed to analyze and project "benefits" that would accrue to Colorado Blue Cross from the merger. She was advised that if she could not do so, she could no longer expect to be employed by Colorado Blue Cross.

In this connection, however, plaintiff testified to discovering, in the course of her accounting duties, that Colorado Blue Cross had built up over $100 million in surplus from subscriber premiums. According to plaintiff, she also discovered that but for loans from Colorado Blue Cross to the New Mexico and Nevada entities, the New Mexico and Nevada entities were insolvent.

According to plaintiff, she reported the lack of statutory reserves for New Mexico and Nevada in a draft of the report for the Commissioner of Insurance and then was directed by a superior to delete these references. The superior also deleted the references in another draft of the report.

Evidence of various other incidents was introduced in support of plaintiff's claim. For example, plaintiff testified that she also discovered that a loan to the New Mexico entity of approximately $13.5 million in 1988 had not been properly reported to the Commissioner of Insurance. She complained to her superior.

According to plaintiff, she also discovered and reported to her supervisor that Colorado Blue Cross was improperly retaining national discount funds in trust which it had previously committed to rebate to certain government and private employers. Next, plaintiff testified that certain tax credits had been claimed which were improper and which represented a tax benefit of approximately $600,000 annually. Upon discovery of this alleged impropriety, plaintiff was directed to submit her

work papers to another employee and she was directed not to work on this project.

As one of her other special projects, plaintiff was assigned to evaluate the reporting of certain split dollar life insurance premiums paid by Colorado Blue Cross. She discovered that in 1988, certain premium amounts paid by Colorado Blue Cross for certain employees had not been included on the W–2 or 1099 forms as required under applicable Internal Revenue Service regulations. Plaintiff reported to her superior that the 1989 forms should be amended and was advised that no changes would be made.

On the basis of these and similar incidents, plaintiff claimed that she was terminated and that defendants' contention that her job was eliminated was a pretext for her termination. Plaintiff further contended that the termination was in violation of public policy because she was exercising her independent judgment as a certified public accountant in objecting to defendants' alleged effort to mislead the Commissioner of Insurance and the failure of Colorado Blue Cross to comply with applicable tax regulations. Plaintiff relied upon § 10–16–102, C.R.S. (1994 Repl.Vol. 4A), Colorado State Board of Accountancy Rules of Professional Conduct Rule 7.3, 3 Code Colo.Reg. 705–1, and 18 U.S.C. § 1001 (1988) as evidencing the public policy which supported her actions.

The parties agree that the propriety of the trial court's ruling on this claim is governed by *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100 (Colo.1992). However, the parties disagree upon the proper interpretation and application of that opinion.

There, the court adopted the elements of a wrongful discharge claim based upon public policy as follows:

[1] *that the employer directed the employee to perform an illegal act* as part of the employee's work related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege; [2] *that the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen* or the employee's right or privilege as a worker; [3] and that the employee was terminated as the result of refusing to perform the act directed by the employer.... [and] [4] that the employee present evidence showing that the employer was aware, or reasonably should have been aware, that the employee's refusal to comply with the employer's order or directive was based on the employee's reasonable belief that the action ordered by the employer was illegal, contrary to clearly expressed statutory policy relating to the employee's duty as a citizen, or violative of the employee's legal right or privilege as a worker.

*Martin Marietta Corp. v. Lorenz, supra,* at 109 (emphasis supplied).

## A

Defendants contended and the trial court agreed that plaintiff's evidence failed to establish the second element in *Lorenz.* We conclude, however, that plaintiff's evidence did satisfy this requirement based upon one of her legal theories. Thus, it is unnecessary to address the other two.

Pursuant to the Colorado State Board of Accountancy Rules of Professional Conduct Rule 7.3, 3 Code Colo.Reg. 705–1, plaintiff was prohibited in the performance of her professional duties from knowingly misrepresenting facts concerning defendants' activities. We agree with plaintiff that this regulation imposed upon her an obligation not to conceal or misrepresent the financial status of the New Mexico and Colorado entities in reports to any governmental agency relative to the proposed merger. It also obligated plaintiff to report and recommend corrective action relative to reports to tax authorities, because the failure to do so, in our view, would violate the rule.

■ Contrary to defendants' contention, as we read *Lorenz,* it is unnecessary to establish that the failure accurately to report the foregoing information must always violate a specific statute. To interpret *Lorenz* in this manner would undermine the principles and public policy governing the obligations of a certified public accountant, which

preclude any deception upon either the state or federal government.

### B

As alternative support for the trial court's ruling, defendants contend that plaintiff's evidence failed to satisfy the third element of the *Lorenz* test, namely, that the employee was terminated for refusing to perform an act mandated by the employer. Specifically, defendants claim that plaintiff's supervisors and not plaintiff were the employees ultimately responsible for the referenced accounting and reporting work. Further, defendants contend that plaintiff never refused to perform any allegedly illegal directive by her supervisor but simply protested and objected to acts or omissions for which her supervisors were responsible. We are not persuaded by this contention.

■ To the extent that plaintiff relies upon the activities surrounding the report to the Commissioner of Insurance, plaintiff was initially directed to assist in preparing the report concerning the merger for her supervisor. The fact that she was not ultimately responsible for submission of this report, in our view, is not one of the *Lorenz* requirements. If it were, the employer in every case could evade liability by simply claiming that the employer and not the employee had ultimate responsibility for submission of a false or misleading report.

■ To the extent that defendants rely upon plaintiff's reassignment to other duties prior to any refusal to perform an illegal act, we also conclude that such may not be relied upon to defeat her claim. If it is apparent that an employee objects to and will not participate in an illegal act, then the employer may not avoid liability under *Lorenz* by simply reassigning the employee to other duties in advance of the termination.

### II

Plaintiff next contends that the trial court erred in directing a verdict on her claim for breach of implied contract. We disagree.

In support of this claim, plaintiff relied upon two theories of liability. First, she testified that certain promises were made to her at the time of, and subsequent to, her employment. Specifically, she testified that the supervisor who interviewed her for the position promised that she would be promoted to replace him within six to twelve months. She also testified that her supervisor, at the time she was terminated, had previously promised that he would not retaliate for a sexual harassment complaint which plaintiff had filed. Plaintiff also claims to have relied upon certain promises that her employer would adhere to the policies of honesty and integrity and that she was told that she would have a career with her employer.

In addition to these alleged promises, plaintiff relied upon the You Book issued to employees in conjunction with their employment, and specifically, the provisions which address discipline for correctable conduct. Plaintiff testified that she was advised by a person in the human resources section of Colorado Blue Cross to read, understand, and rely on these provisions, and that she did so.

■ As pertinent to the alleged promises independent of the You Book, absent an express stipulation as to the length of employment, employment for an indefinite term constitutes an "at-will" contract which may be terminated at any time by either party. *Pickell v. Arizona Components Co.,* 902 P.2d 392 (Colo.App.1994); *Lampe v. Presbyterian Medical Center,* 41 Colo.App. 465, 590 P.2d 513 (1978). Here, the alleged promises relied upon do not address any specific term of employment, and the promises do not diminish the employer's right to terminate plaintiff's contract with or without cause. As a result, these promises would not support the finding of an implied contract. *See Schur v. Storage Technology Corp.,* 878 P.2d 51 (Colo. App.1994).

■ With reference to the You Book and plaintiff's reliance on this manual, the elements of an implied contract claim require evidence that the termination procedures in the manual constitute part of the employer's offer of employment. Plaintiff must also prove that she accepted employment and

performed her employment duties in consideration for the employer's offer to comply with those procedures. *See Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo. 1987).

■ We view the analysis in *Evenson v. Colorado Farm Bureau Mutual Insurance Co.,* 879 P.2d 402 (Colo.App.1993) as dispositive of plaintiff's contention. The *Evenson* court determined that an employee can establish a claim by showing that there is no disclaimer in the manual or, if there is a disclaimer, that it is not conspicuous.

Here, however, prior to receipt of the You Book, plaintiff signed a confidentiality agreement which provided: "It is understood by the parties hereto that this Agreement in no way provides for a contract of employment for any term. The employment hereafter continues at the will of the Employer."

Furthermore, the You Book confirms this limitation upon plaintiff's employment in a disclaimer on the first page of the document in large type that describes the "purpose" of the document as follows:

> This handbook is not a contract or a guarantee of employment. It has been designed as a reference to give you a summary of most policies, procedures and programs. It is a guide which helps you to understand the company and its purpose and your role in meeting its purpose.

The *Evenson* court noted that, even if there is a conspicuous disclaimer, the manual may create an implied contract if it contains mandatory termination procedures or requires "just cause" for termination. *See Allabashi v. Lincoln National Sales Corp.,* 824 P.2d 1 (Colo.App.1991). Here, however, the discipline procedure relative to correctable behavior appeared in a section which indicates that the employer "may" pursue that alternative. Conversely, there is no other language in the manual to indicate that use of the procedures is mandatory in each case.

Finally, the *Evenson* court held that even if the manual contains a disclaimer and includes language that makes use of the disciplinary procedures discretionary, the contract issue should be submitted to the jury if there is evidence that the employer's supervisors treat the disciplinary procedures as mandatory.

Here, unlike *Evenson,* in our view the evidence offered by plaintiff as to this issue is too vague and indefinite to warrant submission of the issue to a jury. Statements by an employee of the human resources division that employees were to use and rely upon the manual does not address the specific provisions relating to discipline. Further, there is no evidence that the procedures were used in each instance of termination generally. Finally, there was no testimony that the procedures were always used with reference to employees in plaintiff's department or at her level of management in the company.

Under these circumstances, we conclude that a directed verdict on this claim was properly entered by the trial court.

### III

■ We also reject plaintiff's contention that the trial court erred in dismissing her claim predicated upon promissory estoppel.

■ To establish this claim, it was incumbent upon plaintiff to demonstrate that, even though the elements of a formal contract were lacking, defendants should have recognized that plaintiff would reasonably rely upon its promises. *See Continental Air Lines, Inc. v. Keenan, supra.*

■ Contrary to plaintiff's contention, the record confirms that the trial court did not grant a directed verdict on this claim. Instead, the trial court considered the claim to be an equitable claim for resolution by the court and not the jury. Such was a proper characterization of the claim. *See Snow Basin, Ltd. v. Boettcher & Co.,* 805 P.2d 1151 (Colo.App.1990).

As to this equitable claim, the trial court, as the fact finder on this issue, specifically found that the testimony of the supervisor who originally hired plaintiff was more credible than plaintiff's with reference to the existence of any promises made in connection with the interview. Further, the trial court also found that plaintiff's training, education, and capability established her knowledge and understanding of her employment status as

an at-will employee and that, therefore, she did not rely upon either any alleged promises or the You Book as controlling her at-will status.

■ Resolution of these issues required a determination of the credibility of the witnesses and the weight to be given their testimony. This resolution is the sole responsibility of the trial court, and there being record support for these findings, we may not reverse the court's decision on appeal. *See Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

### IV

Because the issues will arise on retrial, we address two contentions by plaintiff relating to the admission or exclusion of evidence.

### A

■ First, plaintiff contends that the trial court erred in permitting the introduction of evidence that she was convicted of shoplifting in violation of a municipal ordinance as well as the mental health counseling undertaken in connection with a deferred judgment entered on that violation. This incident occurred approximately five years prior to her initial employment by Colorado Blue Cross. We agree with plaintiff's contention.

■ The trial court is vested with broad discretion in determining the relevancy of proffered evidence. *See Boettcher & Co. v. Munson,* 854 P.2d 199 (Colo.1993). However, while prior felony convictions may be admissible under certain circumstances for impeachment purposes, prior convictions for misdemeanors are not. *Banek v. Thomas,* 733 P.2d 1171 (Colo.1986) (fn. 6).

■ Further, impeachment evidence must be relevant and may not raise collateral issues. *Graham v. Lombardi,* 784 P.2d 813 (Colo.App.1989), *aff'd,* 794 P.2d 610 (Colo. 1990). Additionally, evidence which is too remote in either time or logical relation to the matter in dispute should not be admitted. *See Echave v. Grand Junction,* 118 Colo. 165, 193 P.2d 277 (1948) (in a nuisance action, evidence of an arrest for a liquor violation ten months earlier was too remote); *Sampson v. Missouri Pacific R.R. Co.,* 560 S.W.2d 573 (Mo.1978) (in a negligence action, seven-year-old hospital records concerning plaintiff's alcoholism were inadmissible as too remote); *see also* 1A J. Wigmore, *Evidence* § 37.1 (Tillers rev. ed. 1983).

In our view, the fact that plaintiff requested damages for mental anguish and emotional distress allegedly inflicted by defendants, does not warrant admission of evidence of psychological counseling required as part of a deferred judgment which is remote in time and not linked in any manner to any mental health problems that plaintiff had at, or after, her employment with Colorado Blue Cross. *See Echave v. Grand Junction, supra; Sampson v. Missouri Pacific R.R. Co., supra.*

### B

■ Plaintiff next contends that the trial court erred in excluding her testimony relative to certain conversations between plaintiff and legal counsel for Colorado Blue Cross concerning one of the reporting issues. On this record, we disagree.

Plaintiff, in effect, concedes that the conversations fall within the attorney/client privilege of Colorado Blue Cross. And, contrary to plaintiff's contention, we are unable to conclude that the privilege was waived by eliciting testimony from that attorney relative to the legality of certain activities by Colorado Blue Cross when that testimony is not linked to any specific conversations with plaintiff.

### V

By reason of our resolution of the foregoing issues, it is unnecessary to resolve defendants' cross-appeal relative to the award of costs.

That part of the judgment dismissing plaintiff's claims for wrongful discharge predicated upon implied contract and promissory estoppel theories is affirmed. That part of the judgment dismissing plaintiff's wrongful discharge claim for violation of public policy

is reversed, the award of costs is vacated, and the cause is remanded for a new trial.

BRIGGS and TAUBMAN, JJ., concur.