**Reuben VAN HEERDEN, Plaintiff,**

v.

**TOTAL PETROLEUM, INC., a Michigan corporation, Defendant.**

**Civil Action No. 95–K–2428.**

United States District Court,
D. Colorado.

Sept. 26, 1996.

Frank W. Zlogar, Denver, CO, for Plaintiff.

Cynthia P. Delaney, Shannon Way Roberts, Sherman & Howard, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Plaintiff Reuben van Heerden initiated this employment discrimination action in state court in early September 1995, asserting claims for breach of contract and promissory estoppel against his former employer Total Petroleum, Inc. (TPI). Because van Heerden is a citizen of South Africa and sought damages in excess of $50,000, TPI removed the case to this court.

Van Heerden twice amended his complaint: First to add a federal employment discrimination claim under 42 U.S.C. § 2000e as well as additional state law claims for negligent and/or fraudulent misrepresentation; and second to seek additional damages for emotional distress. TPI moves for summary judgment on all claims.

### I. FACTS.

The following facts are undisputed:

From 1990 to 1993, Reuben van Heerden was employed as a marketing researcher in his native country by Total South Africa, Ltd. ("Total S.A."). In July 1993, van Heerden notified management that his father was being transferred to Denver and that he was considering a move there himself. Because Total affiliate TPI was located in Denver, van Heerden sought a position with it.

On July 5, 1993 the General Manager of Human Resources at Total S.A. wrote to Gary Jones, Vice President of Marketing at TPI, requesting van Heerden be given the opportunity to interview. Gary Jones responded in a letter dated July 21, 1993, agreeing to interview van Heerden but stating that "[van Heerden] must understand we do not currently have job openings." Jones concluded, "If Mr. van Heerden decides to make this move, he should contact me, and I will arrange an interview."

Van Heerden wrote Jones himself on August 12, 1993, stating, "It is very encouraging that you are offering me the opportunity of an interview." Van Heerden continued, "Due to the circumstances in my present position with Total S.A., it will be necessary for me to resign from [sic] 1 September. This will grant me the opportunity of an interview with TPI Denver on 4th Oct. 1993."

After writing the August 12 letter to Jones, Van Heerden wrote another letter dated "August 1993" to the marketing strategy manager at Total S.A., Mr. Gallop, stating that "[i]n accordance with my move over to Total Denver, Colorado, it is required to tender my resignation with Total S.A." Van Heerden's last day at work was October 15, 1993, and he left for Denver three days later to interview.

Van Heerden concedes that at the time he left South Africa, he had not been offered a specific position with TPI. He maintains, however, that he had been offered a position by Jones over the telephone, but that Jones "just didn't know which [one]." Van Heerden Dep. (attached as Ex. 1 to Def.'s Mot. Summ.J.) at 60 (describing telephone conversation with Jerry Jones, Vice President of the Rocky Mountain Marketing Division).

Van Heerden interviewed with TPI sometime during the first half of November, 1993. During the interview, he was offered the

position of retail analyst by Jerry Jones, provided Jones obtained approval from TPI President Daniel Valot to create the position. Van Heerden admits that, at the time of the November offer, details regarding his "term of employment, title and salary had yet to be determined." Pl.'s Opp. to Def.'s Mot. Summ.J. at 3 (Response to Statement of Undisputed Facts).

Early in December, while he was still in Denver, Jones phoned van Heerden to tell him the position had been approved. Van Heerden accepted immediately. Jones suggested he return to South Africa to finalize arrangements and stated details such as immigration "would be worked out." Nothing was said during the interview or this conversation regarding any specific term of employment.

Jones told van Heerden that his contact at TPI in the Human Services Department was Al Binder, Manager of Labor Relations. On January 19, 1994, Binder sent van Heerden a Blanket L–1 Visa Application in South Africa with a cover letter instructing him to take the application documents to the Nonimmigrant Visa Section of the U.S. Consulate in South Africa. An attachment to the visa application entitled "Statement in Support of Petition to Classify Nonimmigrant as Temporary Worker" included the following statement:

> Upon approval of the attached petition, it is the Company's intention to offer him a three-year position as Division Marketing Analyst at an annual salary of $30,000. We, therefore, respectfully request prompt and favorable adjudication of this petition.

The materials included a standard IRS form, "Nonimmigrant Petition Based on Blanket L–1 Petition" which listed the dates of van Heerden's intended employment as "1/10/94 to 1/10/97."

When van Heerden arrived for work at TPI on March 7, 1994, he was given an employee handbook containing the following disclaimer:

> Notwithstanding any employment practice or any statement contained in this Handbook or in any other document or statement issued by TOTAL or any of its representatives, upon due notice you have the right to terminate your employment at any time and TOTAL retains a similar right.
>
> With the exception of a written document signed by TOTAL's President, no person employed by TOTAL has any authority to alter or modify this provision in any way or to guarantee employment for any term or to guarantee any position or promotion.

Van Heerden admits he read the disclaimer. (Van Heerden Dep. at 132:25—133:5.)

In October 1994, van Heerden received his first annual performance review. Van Heerden was told the quality of his work was "unacceptable," that he needed to pay more attention to accuracy and timeliness in completing the projects assigned, and that he needed improvement in his job knowledge. Following the evaluation, supervisor Mike Eha implemented a performance improvement plan for van Heerden and his performance did, in fact improve.

TPI management decided in March 1995 to eliminate van Heerden's position. Van Heerden admits the decision was unrelated to his job performance. His duties were divided up and reabsorbed by other employees within the division. A payroll clerk position was also eliminated at this time. Van Heerden was told he could speak with the personnel department about finding another position within the company and was given a contact name within the personnel department. Van Heerden did not find another job within TPI. On June 3 or 4, 1995, van Heerden left a draft letter of some kind on his supervisor's desk and walked out. He called another supervisor to tell her what he had done, and she told him to stay home until she got back to him. She did not call and van Heerden never returned to TPI.

## II. SUMMARY JUDGMENT STANDARDS.

Summary judgment is appropriate when the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

The facts presented, and appropriate inferences that may be drawn from them, must be construed in the light most favorable to the nonmoving party. *Id.* If a reasonable trier of fact could not return a verdict for the nonmoving party, summary judgment is proper. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The purpose of summary judgment is to determine whether trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995) To avoid summary judgment, the nonmoving party therefore must refer to specific facts, beyond those in the pleadings, and demonstrate the existence of a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

For a "genuine" factual dispute to exist, "there must be more than a mere scintilla of evidence. To avoid summary judgment, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. Summary judgment may be granted if the evidence is merely colorable or is not significantly probative." *Vitkus v. Beatrice Co.,* 11 F.3d 1535 (10th Cir.1993). Unsupported allegations without "any significant probative evidence tending to support the complaint" are insufficient, *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553, as are conclusory assertions that factual disputes exist. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10 (1986). Summary judgment will be granted against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

### III. *MERITS.*

Relying on statements made in the immigration materials prepared by Binder, van Heerden contends he had either an express or implied three-year contract of employment with TPI. In the alternative, van Heerden claims he is entitled to enforce the three-year term under a theory of promissory estoppel. In addition, van Heerden claims TPI misrepresented the three-year term of his employment and fraudulently induced him to quit his job at Total S.A. Finally, van Heerden claims TPI discriminated against him on the basis of his national origin by treating him differently from non-South African employees and by eliminating his position in violation of Title VII of the Civil Rights Act of 1964.

Each of these claims fails as a matter of law.

### A. *Breach of Express or Implied Contract and Promissory Estoppel.*

■ A valid contract requires mutual assent, usually manifested in the form of an offer and an acceptance. *Restatement (Second) of Contracts* § 22 (1981). Van Heerden alleges Binder's statements in support of his visa application constituted an offer of employment for a fixed three-year period. TPI asserts this theory fails as a matter of law because the statements related to immigration requirements and were made well after van Heerden had accepted TPI's offer of employment.

■ A valid contract also requires consideration. *Restatement (Second) of Contracts* § 71 (1981). A performance or returned promise must be bargained for. *Id.* I agree with TPI that the statements in the immigration papers did not constitute an offer of employment for a three-year term. They were made *after* van Heerden accepted TPI's offer of employment and could not, therefore, have been "bargained for." Based on the undisputed facts, I conclude van Heerden's offer of employment was for an indefinite period of time.

Alternatively, van Heerden contends the series of events culminating with the immigration papers gave rise to an implied three-year employment contract. TPI asserts this theory also fails as a matter of law because there was no offer of a three-year term on which van Heerden could justifiably rely and because van Heerden gave no consideration for such a contract.

■ An individual hired for an indefinite period of time in Colorado is an "at will employee" whose employment may be terminated by either party without cause and without notice. The termination of an "at will employee" does not give rise to a cause

of action for breach of contract. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo.1987). The presumption of at will employment, however, is not absolute and may be rebuttable under circumstances giving rise to an implied contract of employment. *Id.*

In *Continental*, a discharged employee sought to enforce termination procedures set forth in defendant's employee manual. The Colorado Supreme Court determined the employee could be entitled to relief under ordinary contract principles if he could demonstrate

> first, that in promulgating the termination procedures the employer was making an offer to the employee—that is, the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain (citation omitted)—and second, that his initial or continued employment constituted acceptance of and consideration for those procedures.

*Continental*, 731 P.2d at 711. Applying *Continental* to the facts of this case, van Heerden could be entitled to relief if he shows that TPI's statements regarding a three-year term of employment constituted an offer that he accepted and for which his coming to work for TPI was consideration. *See Orback v. Hewlett–Packard Co.*, 909 F.Supp. 804, 807 (D.Colo.1995) (applying *Continental*); *Johnson v. Cadillac Plastics Group, Inc.*, 908 F.Supp. 847, 851 (D.Colo.1995) (same).

■ While the existence of an implied contract is normally a factual inquiry for the jury, the issue may be decided as a matter of law if the alleged offer is nothing more than a vague assurance or if there was no consideration. Both circumstances exist here.

Van Heerden contends his conversations with Gary Jones and his acceptance of the position in December were "preliminary negotiations" under the *Restatement (Second) of Contracts* § 26 (1981) that were later finalized to form a binding contract. In support, van Heerden asserts that in his Denver interview with Jerry Jones in November, 1993, Jones told him the position would be for "at least several years" and that the "exact title, salary and term[s] would be filled in after [he] returned to South Africa to await the processing of his visa application." (Pl.'s Br. Opp'n Def.'s Mot.Summ.J. at 8.) These terms, van Heerden asserts, were "later defined" in Binder's letter to the INS in January of 1994. *Id.* According to van Heerden, he furnished consideration for the three-year term when he "followed through with his promise to move to Denver and begin working for TPI." *Id.* His theory is both legally and factually flawed.

1. *Consideration for the Three–Year Term of Employment.*

■ First, Binder's representations to the INS did not constitute an offer of employment for a term of years. As set forth above, they were made after van Heerden had already accepted TPI's offer of employment and in an entirely different context, i.e., obtaining a visa.[1] Second, van Heerden furnished no consideration for the three-year term.

Binder's letter to the immigration authorities was written after van Heerden had accepted TPI's offer. There is nothing in the record to support the assertion that van Heerden's acceptance was contingent upon TPI's alleged promise of a three-year term of employment. To the contrary, van Heerden's move to the U.S. was contingent upon nothing more than the securing of a visa. (Surely if he had failed to obtain a visa and had not come to work for TPI, TPI would not

1. *Geva v. Leo Burnett Co., Inc.*, 931 F.2d 1220 (7th Cir.1991), is a case in point. In *Geva*, as here, defendant employer submitted a visa application to the INS on behalf of a prospective employee who had already quit his previous job. The Seventh Circuit ruled the employer's statement in the application that it intended to employ plaintiff for three years did not, by itself, constitute a promise on which the prospective employee could justifiably rely as an offer for a term of years. *Id.* at 1224.

> Van Heerden attempts to distinguish *Geva* by arguing that the plaintiff there did not know of the three-year term until after the visa was granted, while he bargained for the term before the application was submitted. There is no support in the record for this assertion.

have been able to sue van Heerden for breach of contract. Yet this is precisely the conclusion one would have to reach under van Heerden's theory of relief.)

There is no evidence in the record that van Heerden decided to "follow through" with his move to Denver "in exchange" for TPI's promise of a three-year term or that the term was otherwise "bargained for." Because van Heerden has failed to make a showing sufficient to establish the existence of an element essential to his case and on which he bears the burden of proof at trial, his breach of contract claim fails as a matter of law. *See Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

Further, the remarks van Heerden attributes to Jones regarding "several years" of employment are too vague to support his claim under an implied contract theory.

### 2. *Vagueness.*

■ An offer must contain terms "sufficiently definite to enable the court to determine. whether the contract has been performed." *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir.1994) (quoting *Stice v. Peterson*, 144 Colo. 219, 355 P.2d 948, 952 (1960)), *applied in Orback* and *Cadillac*. In *Mariani v. Rocky Mt. Hosp. & Med. Serv.*, 902 P.2d 429, 434 (Colo.App.1994), *aff'd* 916 P.2d 519 (Colo.1996), an employer's statements promising an employee a promotion within six to twelve months and a "career" with the employer were deemed insufficient to defeat a presumption of at-will employment. The court found these statements insufficient to support a breach of contract claim, stating "absent an express stipulation as to the length of employment.... these promises would not support the finding of an implied contract." *Id.*

The "promise" attributed to Jones is much less specific than the promises rejected in *Mariani*. To support his assertion that Jones promised him "several years'" employment, van Heerden cites exclusively to his own, not Jones's, deposition testimony. Further, van Heerden's testimony makes clear that it was he who referred to working in the U.S. for "several years," not Jones. Specifically, when asked whether Jones ever "inquired as to how long [he] planned to be staying and working in the U.S. if [he] got a job here," van Heerden replied that "all [he could] remember" was that he "mentioned to [Jones] at least several years" because he also wanted "to take some time to see the country." (Van Heerden Dep. at 88:9–16.) [2] To characterize this exchange as an offer of a term of employment "sufficiently definite to enable the court to determine whether the contract has been performed" strains credulity.

■ Based on the foregoing, I grant TPI's motion for summary judgment on van Heerden's breach of contract claims. I also grant the motion as to van Heerden's promissory estoppel claim because a promise too vague to constitute an offer of employment under a theory of implied contract is also too vague to create on the part of an employer a reasonable expectation of reliance under a theory of promissory estoppel. *Johnson v. Cadillac Plastics*, 908 F.Supp. at 852–53.

### B. *Negligent or Fraudulent Misrepresentation.*

Van Heerden asserts TPI negligently or fraudulently induced him to resign his position with Total S.A. and to accept a position in Denver by promising him a three-year term of employment. Both claims fail as a matter of law.

■ A necessary element of a claim for negligent misrepresentation is that the defendant gave information to the plaintiff for use in a business transaction with a third party. *See Snoey v. Advanced Forming Technology, Inc.*, 844 F.Supp. 1394, 1400 (D.Colo.1994) (applying Colorado law.) It is undisputed in this case that van Heerden wrote his letter of resignation to Total S.A. in

---

**2.** Similarly, in his response to TPI's statement of undisputed facts, van Heerden cites page 48 of his deposition as support for the assertion that he was offered a position with TPI before he left South Africa in October 1993. What his testimony actually says is that after his earlier telephone conversation with Jones, he felt "very positive" that Jones "would have something for [him]." Van Heerden's subjective feelings about these conversations, no matter how "positive," are not evidence sufficient to rebut a motion for summary judgment.

August 1993 effective October 15, 1993, while the discussions regarding a three-year term of employment with TPI did not begin until January 1994. Because TPI's "representations" regarding the three-year term could not have been used by van Heerden in his "transaction" with Total S.A., van Heerden fails to state a claim for negligent misrepresentation.

█ With respect to his claim for fraud, van Heerden alleges TPI "knew" it was not offering him a three-year position and "knew that its actions and statements regarding employment and salary were fraudulent." Am.Compl. ¶¶ 31–32. The allegations utterly fail to state a claim for fraud. If, as I have already concluded, TPI did not intend to offer van Heerden a three-year term of employment, TPI's "knowledge" that it did not intend to do so is not actionable. Even if TPI had offered van Heerden a three-year contract, there is nothing in the record to support an allegation that it knew the offer was false or fraudulent at the time it was made. At most, van Heerden's allegations support a claim for breach of contract, which I have already rejected under a summary judgment standard.

I agree with TPI both that van Heerden has failed to plead fraud with specificity as required by Rule 9 of the Federal Rules of Civil Procedure and that any amendment of his complaint at this stage of the proceedings would be futile. *See Price v. Public Serv. Co. of Colorado,* 850 F.Supp. 934, 951 (D.Colo. 1994) (citing *T.V. Communications Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d 1022, 1028 (10th Cir.), *cert. denied,* 506 U.S. 999, 113 S.Ct. 601, 121 L.Ed.2d 537 (1992)). I therefore grant TPI's motion with respect to this claim.

### C. *Title VII—Discrimination Based on National Origin.*

Van Heerden claims TPI discriminated against him based on his national origin. He claims TPI treated him differently from other employees by refusing to reimburse him for relocation expenses, Pl.'s Br. Opp'n Def.'s Mot.Summ.J. at 16–17 (citing van Heerden Dep. at 79 and immigration materials at-

tached as Ex. 1–D to Def.'s Mot.Summ.J.); by placing negative notes in his personnel file without his knowledge, *id.* at 18 (van Heerden Dep. at 107–108); by evaluating him differently in his performance, *id.* (van Heerden Dep. at 120–125); and by denying him Excel computer training when he requested it. *Id.* (van Heerden Dep. at 177). Van Heerden also claims he was wrongfully denied promotions for two positions for which he applied. *Id.* at 18–19 (citing van Heerden Dep. at 190–192).

█ Unlawful discrimination under Title VII of the Civil Rights Act of 1964 may be proven either with direct evidence of discrimination or by inference through the use of circumstantial evidence. In the absence of direct evidence of discrimination, the Tenth Circuit applies the three part framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to sharpen the inquiry. *Kenworthy v. Conoco, Inc.,* 979 F.2d 1462, 1469 (10th Cir. 1992) (applying McDonnell Douglas to national origin discrimination claim under Title VII).

█ Accordingly, once plaintiff makes a *prima facie* showing of discrimination, the burden of production shifts to the employer to present a facially nondiscriminatory reason for its employment decision. *McDonnell Douglas,* 411 U.S. at 802–02, 93 S.Ct. at 1824–25, *applied in Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995). If the defendant meets this burden, the presumption of discrimination dissolves and plaintiff assumes the normal burden of any plaintiff to prove the employment decision at issue was motivated by discriminatory intent.

█ At the summary judgment stage, it is plaintiff's burden to establish a *prima facie* case and then to show that there is a genuine dispute of material fact as to whether the employer's proffered reason is pretextual—i.e., unworthy of credence. *Randle,* 69 F.3d at 451 (citing *Ingels v. Thiokol Corp.,* 42 F.3d 616, 622 (10th Cir.1994)). If the plaintiff succeeds, he withstands summary judgment and is entitled to go to trial. *Id.*[3] Van Heerden has not met his burden here.

3. At trial, the plaintiff "must prove illegal dis-          crimination either (1) inferentially by showing

### 1. *Differential Treatment.*

Van Heerden has presented no competent, admissible evidence that he was treated differently with respect to relocation expense reimbursement, notes in his personnel file, performance evaluation, or training opportunities than American citizens employed by TPI. The immigration materials submitted by Binder on van Heerden's behalf refer to TPI's intention "to offer" van Heerden a position and that he was coming to the U.S. "to assume" a position with TPI. *See* Def.'s Mot.Summ.J., Ex. 1–D. There is no mention of Total S.A. and no characterization of van Heerden's move as an "intracompany transfer." The only evidence van Heerden submits to support his claim regarding expatriate status and reimbursement for relocation expenses is his own testimony, which is conclusory and, with respect to statements purportedly made by Jones, hearsay. Van Heerden has presented no evidence that he was treated differently with respect to the notes placed in his file and, further, the notes mentioned do not refer to his national origin.

█ Based on the foregoing, I find van Heerden has failed to establish a *prima facie* case of differential treatment. Even if he could establish a *prima facie* case, however, his claims would fail because he has come forward with no evidence to rebut TPI's contention that any differences in treatment were due to van Heerden's poor job performance, not his national origin.

### 2. *Failure to Promote/Discriminatory Discharge.*

█ Consideration of TPI's motion for summary judgment on van Heerden's failure to promote claim involves a determination as to whether there is a disputed issue of material fact on the following questions: (1) whether van Heerden was qualified for the corporate buyer or retail planning analyst positions he sought after his position was eliminated; and (2) whether TPI's proffered reasons for not considering him were pretextual. *See Randle,* 69 F.3d at 453.

that the proffered reason is a pretext for discrimination; and/or (2) directly by offering direct

Van Heerden does not deny that a TPI employee must have one year's experience in a current position before he may be considered for a promotion, and admits he had not been in his current position for the required year. Van Heerden nevertheless claims he was qualified for the promotions because he had been "with the TOTAL GROUP for six years." Pl.'s Br.Opp.Def.'s Mot.Summ.J. at 19. Van Heerden offers no evidence to support the assumption implicit in his argument that employment with other Total companies counts toward the one-year qualification for promotion within TPI and therefore fails to create a triable issue on the question of whether he was qualified for a promotion.

Van Heerden's claim would fail even if he could establish his qualifications, however, because he has created no triable issue on the question of discriminatory animus. To support his claim that the decision to eliminate his position violated Title VII, van Heerden offers only the testimony of his supervisor and the previously rejected allegations regarding differential treatment. The supervisor's testimony—which was simply that van Heerden's performance improved considerably after his initial poor evaluation and that the supervisor had recommended only that a clerk's position be cut (*see* Eha Dep. (Ex. C, Pl.'s Br.Opp.Def.'s Mot.Summ.J.) at 44–67)—has nothing to do with van Heerden's national origin and is insufficient to survive summary judgment.

### IV. *CONCLUSION.*

Each of Plaintiff Reuben van Heerden's state and federal claims for relief fail as a matter of law. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED.**

evidence of discrimination." *Id.* at 453 (citing *Ingels,* 42 F.3d at 621).