**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 2, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ADRIAN OSORNIO; BETSY
MARTINEZ; JESSICA WILLIAMS;
ISTQUIA REYNA; MIGUEL
FONTANET; MAYRA CARMONA,

        Plaintiffs-Appellants,

v.

T-MOBILE USA, INC.,

        Defendant-Appellee.

No. 05-1379
(D.C. No. 04-CV-1135-REB-PAC)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **McKAY**, and **BRORBY**, Circuit Judges.

Plaintiffs Adrian Osornio, Betsy Martinez, Jessica Williams, Istquia Reyna,

Miguel Fontanet, and Mayra Carmona appeal from the district court's entry of

summary judgment in favor of defendant T-Mobile USA, Inc., their former

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

employer, on their federal discrimination claims under Title VII of the Civil Rights Act of 1964 and contract or promissory estoppel claims under Colorado state law. We exercise jurisdiction under 28 U.S.C. § 1291 and we affirm.

**BACKGROUND**

Plaintiffs (who are Hispanic), were all members of a bi-lingual team of customer-care representatives in T-Mobile's call center in Colorado Springs, Colorado. They responded to Spanish-speaking customers' telephone requests for assistance with T-Mobile wireless service. Mr. Osornio, as team coach, was held responsible for the team's service, productivity, and work environment. In her supervisory role, his manager (who is also Hispanic) advised him orally that he should not threaten his team members. On March 10, 2003, the manager met with him and issued a written warning relating to his attendance, job performance, and leadership characteristics such as approachability, interaction, and efforts to maintain a positive work environment. The warning indicated that he was to improve his performance by March 31, 2003.

Two days later, the manager conducted a meeting attended by three members of Mr. Osornio's team. A team member who is not a party to this action told the manager that Mr. Osornio had held a meeting at which he told team members that he had received a written warning and that his job was at stake due to the team's failure to meet performance goals. The team member felt that the

underlying message was that all of their jobs were in jeopardy. Plaintiff Mayra Carmona generally corroborated this account.

The manager discussed Mr. Osornio's team meeting with other management and human resources personnel. The group agreed that his comments amounted to an implicit threat to team members' continued employment and that he should be discharged for creating a poor work environment. T-Mobile terminated Mr. Osornio's employment that day. Another Hispanic employee replaced Mr. Osornio as coach.

When management informed team members that Mr. Osornio would no longer be their coach, the members expressed their disagreement with this decision. Later, team-member plaintiffs signed two letters written by Mr. Osornio and addressed to T-Mobile management, stating that Mr. Osornio had not threatened their jobs. However, they did not contend that T-Mobile had discriminated against Mr. Osornio, and they took no other action on his behalf. After Mr. Osornio's discharge, team-member plaintiffs perceived a deterioration in their conditions of employment. For varying reasons, all of the plaintiffs have left T-Mobile's employ.

Mr. Osornio and the team members filed this lawsuit. Mr. Osornio asserted that he was subjected to disparate treatment based on his race or national origin. Ms. Martinez, Ms. Williams, Ms. Reyna, Ms. Carmona, and Mr. Fontanet assert

that T-Mobile retaliated against them for complaining about the company's treatment of Mr. Osornio. Mr. Fontanet also alleges that he was subjected to a sexually hostile work environment through the actions of the manager who initiated Mr. Osornio's discharge. All plaintiffs assert that T-Mobile should be held liable under a contract or promissory estoppel theory because it disregarded the terms of its employee manual and other publications.

## DISCUSSION

We review the district court's summary judgment decision de novo, applying the same legal standards that the district court applied. *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1191 (10th Cir. 2006). "Summary judgment is proper if the evidence, viewed in the light most favorable to the non-moving party, presents no genuine issue of material fact and the court finds the moving party is entitled to judgment as a matter of law." *Id.*

### Mr. Osornio's discrimination claim

Mr. Osornio claims that T-Mobile unlawfully discriminated against him based on his race or national origin. Because he relied on circumstantial evidence to support his claim, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), provides the appropriate evaluation framework. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).

> *McDonnell Douglas* first requires the aggrieved employee to establish a prima facie case of prohibited employment action. . . . If

-4-

the employee makes a prima facie showing, the burden shifts to the defendant employer to state a legitimate, nondiscriminatory reason for its adverse employment action. If the employer meets this burden, then summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual.

*Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (quotations and citation omitted).

Both parties assume that Mr. Osornio has presented a prima facie case of discrimination and proceed to the question of whether T-Mobile had a legitimate basis for its termination decision. T-Mobile's proffered reason is its professed belief that, just two days after being placed on written warning, Mr. Osornio held a team meeting at which he exhibited poor leadership and created a negative work environment. Mr. Osornio counters that this reason can be determined pretextual because: (1) he did not, in fact, threaten the team's jobs; (2) T-Mobile failed to follow its normal progressive discipline policy; and (3) T-Mobile did not comply with Mr. Osornio's request for a thorough post-termination investigation.

Mr. Osornio's pretext argument requires the court to "examine the facts as they appear to the person making the decision," to determine "not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City & County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004) (quotations omitted). "[A]t issue is whether the evidence of Plaintiff's misconduct presented to [the

decisionmakers] was so weak that a rational factfinder could infer that [the] expressed reason for terminating Plaintiff must have been pretextual." *Id.* at 925. Though Mr. Osornio denies that he threatened the team, he presents no evidence challenging T-Mobile's perception of his comments.

And Mr. Osornio's claim that T-Mobile fell short of his expectation of progressive discipline adds little to the pretext analysis. "The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that . . . the substantive reasons given by the employer for its employment decision were pretextual." *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995) (emphasis omitted). Because it is uncontroverted that T-Mobile decisionmakers did not believe a rigid policy existed, "even if the failure to [follow procedure] was a mistake, it was not pretextual." *Id.* at 455. Moreover, T-Mobile's refusal to re-investigate the situation and revisit its decision do not affect the pretext question. *See Hardy v. S.F. Phosphates Ltd.*, 185 F.3d 1076, 1081-82 (10th Cir. 1999) (rejecting plaintiff's suggestions for additional avenues of investigation and concluding that his claim of superficial investigation did not "give rise to an inference of pretext"). Because there is no genuine issue of material fact concerning pretext and because T-Mobile was entitled to judgment as a matter of law, we affirm the district court's decision granting the motion for summary judgment on Mr. Osornio's discrimination claim.

**Team members' retaliation claims**

The team members assert that, after they opposed Mr. Osornio's discharge, they were subjected to illegal retaliatory conduct. A prima facie case of retaliation under Title VII requires a showing that (1) plaintiffs were "engaged in protected opposition to discrimination;" (2) they "suffered an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action." *Miller v. Auto. Club of N.M., Inc.*, 420 F.3d 1098, 1119-20 (10th Cir. 2005).

Here, the team members' case fails at the first element. There is no evidence that any of them ever complained that Mr. Osornio's discharge was discriminatory or related to his national origin or race. Accordingly, T-Mobile was entitled to summary judgment on the retaliation claims.

**Mr. Fontanet's sexual harassment claim**

Mr. Fontanet has raised a claim of hostile work environment sexual harassment predicated on the actions of a female manager. "For a hostile environment claim to survive a summary judgment motion, a plaintiff must show that a rational jury could find that the workplace was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *MacKenzie v. City & County of Denver*, 414 F.3d 1266,

1280 (10th Cir. 2005) (quotation and alteration omitted). "Severity and pervasiveness are evaluated according to the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (citation and quotation omitted).

Mr. Fontanet's account depicts inappropriate conduct on the part of the manager. According to Mr. Fontanet, the manager abused her authority to supervise his telephone interactions by sitting unnecessarily close to him, placing her hand on the upper half of his thigh, and letting it linger there. This happened three times; the last time occurred after Mr. Fontanet asked her not to touch him. Also, she greeted Mr. Fontanet twice with "a full-body hug, full contact," Aplt. App. at 197-203, even though he told her he didn't "appreciate . . . [b]eing touched or hugged," *id.* at 201.

The manager's actions could be characterized as predatory and, at the very least, incompatible with a proper work environment. Nevertheless, we cannot conclude that the five incidents described by Mr. Fontanet are indicative of a hostile work environment. *See Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1260-63 (10th Cir. 1998) (holding that "four specific acts of unwanted physical

contact" and several gender-based comments were insufficient for "a rational jury [to] find that plaintiffs' workplace was permeated with discriminatory intimidation"). We affirm the grant of summary judgment for T-Mobile on Mr. Fontanet's hostile environment claims.

**State-law contract and promissory estoppel claims**

All plaintiffs claim that, by discharging them without following progressive disciplinary procedures, T-Mobile breached their contracts of employment or broke other enforceable promises in violation of Colorado law.[1] In Colorado, "an employee hired for an unspecified period of time is presumed to be an 'at-will employee' whose employment may be terminated without cause or notice and such termination does not give rise to a cause of action." *Evenson v. Colo. Farm Bureau Mut. Ins. Co.*, 879 P.2d 402, 408 (Colo. Ct. App. 1993). This general rule does not apply, however, if the employer has limited its right to terminate employees. *Id.* at 408-09.

A employer may make specific discipline and termination procedures part of an express or implicit employment agreement.

> Whether an alleged promise is claimed to be part of an express contract or is asserted as the basis for the application of promissory estoppel, it must be sufficiently specific so that the judiciary can

---

[1] We note, however, that Ms. Carmona, Mr. Fontanet and Ms. Williams left T-Mobile's employ voluntarily. Their claims of constructive discharge have no logical connection to claims of procedurally improper termination.

> understand the obligation assumed and enforce the promise according to its terms.
>
> Thus, in order to constitute an enforceable promise, a statement by the employer must meet two requirements. It must disclose a promissory intent or be one that the employee could reasonably conclude constituted a commitment by the employer.

*Hoyt v. Target Stores*, 981 P.2d 188, 194 (Colo. Ct. App. 1998) (citation omitted). In the absence of a written promise from the employer, the "issue should be submitted to the jury if there is evidence that the employer's supervisors treat the disciplinary procedures as mandatory." *Mariani v. Rocky Mountain Hosp. & Med. Serv.*, 902 P.2d 429, 435 (Colo. Ct. App. 1994). A mandatory policy is demonstrated by evidence that "the procedures were used in each instance of termination generally" and "the procedures were always used with reference to employees in plaintiff's department or at her level of management in the company." *Id.*

Here, plaintiffs fail to provide any T-Mobile statement committing to progressively severe discipline before a resort to termination. In fact, the only documentary evidence shows T-Mobile's explicit disclaimer of an intent to alter the at-will employment relationship. Plaintiffs rely entirely on a former manager's testimony on her understanding that T-Mobile follows progressive discipline steps with under-performing employees. Under the standards

established by the Colorado courts, the former manager's imprecise statements do not demonstrate a mandatory progressive discipline policy.[2]

Because plaintiffs' evidence does not suggest an alteration in their at-will status, there are no material issues of disputed fact relative to their contract and promissory estoppel claims. The district court correctly granted T-Mobile's summary judgment motion on these claims.

The judgment of the district court is AFFIRMED.

Entered for the Court


Monroe G. McKay
Circuit Judge

---

[2] Plaintiffs' brief also mentions that Mr. Osornio's promissory estoppel claim is based on the unfavorable results of T-Mobile's post-termination alternative resolution process. *See* Aplt. Br. at 25-26. He contradicts his own claim, however, with the deposition statement that he learned of the process only after his discharge. Aplt. App. at 464. An actionable promissory estoppel claim requires a showing that the employee reasonably relied on the policy at issue to his detriment. *See Patzer v. City of Loveland*, 80 P.3d 908, 912 (Colo. Ct. App. 2003) (explaining that reasonable reliance is an essential element of a promissory estoppel claim).